UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHINA UNITED LINES, LTD, a China company,

    Plaintiff,

-against-

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

    Defendant.

---

CIV. NO. 1-23-cv-10313-PKC

Hon. P. Kevin Castel

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*,
   33 N.Y.3d 353, 128 N.E.3d 128 (2019) .................................................................................13

*Al-Qadaffi v. Servs. for the Underserved*,
   No. 13-CV-8193, 2015 WL 585801 (S.D.N.Y. Jan. 30, 2015), *aff'd*, 632 Fed.
   Appx. 31 (2d Cir. 2016) ..........................................................................................................15

*Anthony v. Brockway*,
   No. 15-CV-451, 2015 WL 5773402 (N.D.N.Y. Sept. 30, 2015) .............................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................5

*AVS Techs., Inc. v. Sterling Natl. Bank*,
   2020 N.Y. Slip Op. 32208, 2020 N.Y. Misc. LEXIS 3208 (N.Y. Sup. Ct.
   2020) ........................................................................................................................................7

*Bank of N.Y. Mellon Tr. Co., N.A. v. Gebert*,
   No. 13-CV-6988, 2014 U.S. Dist. LEXIS 64511 (Castel, J.) (S.D.N.Y. May 9,
   2014) ................................................................................................................................10, 12

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   778 F. Supp. 2d 375 (S.D.N.Y. 2011) ......................................................................................6

*Callahan v. Global Eagle Ent., Inc.*,
   No. 18-CV-8343, 2019 U.S. Dist. LEXIS 90822 (Castel, J.) (S.D.N.Y. May
   30, 2019) ...........................................................................................................................6, 10

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .....................................................................................................4

*Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*,
   887 F. Supp. 2d 459 (E.D.N.Y. 2012) .....................................................................................9

*Garza v. Marine Transp. Lines, Inc.*,
   861 F.2d 23 (2d Cir.1988) ......................................................................................................13

*Joseph Martin Jr., Delicatessen, Inc. v. Schumacher*,
   436 N.Y.S. 2d 247, 417 N.E. 2d 541 (1981) ......................................................................8, 9

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
   574 F. Supp. 3d 205 (S.D.N.Y. 2021) ......................................................................................8

*New Hampshire Ins. Co. v. Wellesley Cap. Partners, Inc.*,
   200 A.D.2d 143, 612 N.Y.S.2d 407 (1st Dep't 1994) ............................................................... 8

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) .................................................................................................... 5

*Photopaint Techs., LLC v. Smartlens Corp.*,
   335 F.3d 132 (2d Cir. 2003) .................................................................................................. 10

*Pinto-Thomaz v. Cusi*,
   No. 15-CV-1993, 2015 U.S. Dist. LEXIS 158518 (Castel, J.) (S.D.N.Y. Nov.,
   24, 2015) ................................................................................................................................. 9

*Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*,
   No. 19-CV-5487, 2020 U.S. Dist. LEXIS 81151 (Castel, J.) (S.D.N.Y. May 7,
   2020) ....................................................................................................................................... 4

*Shafran v. Harley-Davidson, Inc.*,
   No. 07-CIV-01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ................................ 5

*Stinnett v. Delta Air Lines, Inc.*,
   278 F. Supp. 3d 599 (E.D.N.Y. 2017) ................................................................................. 2, 4

*Wasitowski v. Pali Holdings, Inc.*,
   No. 09-CV-8243, 2010 U.S. Dist. LEXIS 37802 (Castel, J.) (S.D.N.Y. April
   8, 2010) ................................................................................................................................... 7

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. STATEMENT OF FACTS .................................................................................................. 2
    A. The Underlying Agreements ................................................................................... 2
    B. Amazon's Termination of the Work Order .............................................................. 4
III. ARGUMENT ....................................................................................................................... 5
    LEGAL STANDARD ......................................................................................................... 5
    A. CUL's First Cause of Action Fails to Allege Breach of a "Binding Written Agreement" to Terminate. ....................................................................................... 5
        1. CUL's first breach of contract claim fails because the parties' underlying agreement requires any modifications to be signed, and CUL does not allege the new "binding written agreement" was signed. .................................................................................................... 6
        2. CUL's first breach of contract claim also fails because there was no "binding written agreement" capable of being breached. ....................... 7
    B. CUL's Second Cause of Action Fails Because Unambiguous Provisions of the Agreements Allowed for Termination for Cause. ........................................... 10
        1. Section 7(2) unambiguously prevents CUL from disclosing Amazon's trade name without prior written consent. .............................. 12
        2. Other provisions of the Agreements also unambiguously prevented CUL from disclosing Amazon's proprietary information. ...................... 14
IV. CONCLUSION ................................................................................................................. 15

## I.     INTRODUCTION

This dispute is about the termination of a contract between Amazon.com Services, LLC ("Amazon" or "Defendant") and China United Lines ("CUL" or "Plaintiff"). The Court granted CUL leave to amend its complaint to address deficiencies noted by Amazon in its pre-motion letter, and CUL filed its Second Amended Complaint ("Complaint" or "SAC") on March 18, 2024. CUL's amendments do not save either claim from the fatal deficiencies noted in Plaintiff's pre-motion letter. CUL remains unable to allege facts sufficient to state a claim and the Court should dismiss CUL's claims with prejudice and without any further leave to amend.

In its first cause of action for breach of contract, CUL alleges that the parties formed a separate "binding written agreement" to terminate the underlying contract and that Amazon breached that new "agreement." This cause of action fails as a matter of law because (1) the original contract expressly precluded amendment without a **signed** writing, and CUL does not (and cannot) allege the "new agreement" was signed; and (2) CUL cannot establish the existence of a new contract capable of being breached. Rather than form a new contract or modify the existing contract, Amazon simply gave notice of its intent to terminate for convenience before learning of a basis to terminate for cause as allowed by the MTA.

In its second cause of action, CUL alleges Amazon breached the parties' actual governing contract by "improperly" terminating that contract for cause. This second cause of action fails as a matter of law because Amazon's termination for cause following CUL's violation of the contract's publicity provisions was proper under the plain terms of the contract. Seemingly acknowledging that CUL's conduct gave Amazon the right to terminate for cause, CUL attempts to re-write a provision of the contract so that its conduct would not be in breach. CUL's attempt to do so fails because the provisions prohibiting CUL from publicizing its relationship with Amazon

unambiguously gave Amazon the right to terminate for cause.

Therefore, Plaintiff has not—and ultimately cannot—plausibly allege a breach by Amazon because Amazon did not breach the contract; rather, Amazon properly terminated the contract for cause, due to CUL's breach.

As a result of the foregoing, and for the reasons more fully set forth below, CUL's second amended complaint should be dismissed in its entirety.

## II.     STATEMENT OF FACTS[1]

### A.     The Underlying Agreements

On April 7, 2022, the parties entered into a Master Transportation Agreement ("MTA"), incorporating a previously signed Non-Disclosure Agreement (the "NDA"), in advance of an April 29, 2022 "Work Order" (together, the "Agreements"). (SAC ¶ 8). The MTA and NDA prevented CUL from using Amazon's trade name, among other obligations.

Section 3 of the NDA provides in relevant part: "You may use Confidential Information only in pursuance of your business relationship with Amazon. Except as provided in these terms, you will not disclose Confidential Information to anyone without Amazon's prior written consent. . .". (Declaration of Robert Miller in Support of Defendant's Motion to Dismiss ("Miller Decl."), Ex. A). Section 6 of the NDA provides:

> All Confidential Information will remain the exclusive property of Amazon. Amazon's disclosure of Confidential Information will not constitute an express or implied grant to you of any rights to or under Amazon's patents, copyrights, trade secrets, trademarks or other intellectual property rights. You will not use any trade name, trademark, logo or any other proprietary rights of Amazon (or any of its Affiliates) in any manner without prior written authorization of such use by a Vice President of Amazon (or its applicable Affiliate).

---

[1] Reference to CUL's allegations is for purposes of this motion only and does not necessarily constitute an admission that Amazon admits such allegations. This section also references documents incorporated by reference into the Second Amended Complaint, *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) ("A document is incorporated by reference if the complaint makes, a clear, definite and substantial reference to the document.").

(*Id*.). Section 7 of the NDA provides: "You will notify Amazon immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of these terms. . ." (*Id.*).

In Section 7(2) ("Publicity") of the MTA, CUL specifically agreed that it would "not use Amazon's trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights without Amazon's prior written consent." (Miller Decl., Ex. B). Consistent with the NDA, Section 7(2) of the MTA restricts CUL's use of Amazon's trade name regardless of whether Amazon or any thirty party has acknowledged a commercial relationship with CUL.

Together, the MTA and the NDA (together, the "Agreements") made clear that (1) Amazon had an absolute right to control whether and how its trade name was used by CUL, (2) Amazon's own disclosure of its commercial relationship with CUL did not entitle CUL to advertise that relationship of its own volition, and (3) CUL was required to gain Amazon's written approval before using Amazon's trade name.

The MTA also gave Amazon the right to terminate the contract ***immediately*** upon CUL's violation of confidentiality provisions outlined in Section 7 "Confidentiality":

> (3) Termination for cause. Either party may terminate this Agreement or a Work Order for material breach by providing at least 30 days' written notice if the other party fails to cure the breach within 30 days of receiving notice of the breach. **Amazon may immediately terminate all** or any part **of this Agreement or a Work Order upon written notice if you violate** Section 6(1) or **Section 7 of these General Terms.**

(Miller Decl., Ex. B) (emphasis added).

The contract also allows the parties to terminate for convenience. Section 5(2): "*Termination for convenience.* Either party may terminate this Agreement or a Work Order for convenience by providing at least 90 days' written notice." (*Id.*). Termination for convenience by Amazon triggers liquidated damages. (SAC ¶ 17). Termination for cause does not. (SAC ¶ 18).

B. **Amazon's Termination of the Work Order**

On April 1, 2023, Amazon sent CUL a notice of its intent to terminate the Work Order for convenience, with an effective date of June 30, 2023 (90 days after the notice under the contract). (SAC ¶¶ 17, 19). After a videoconference on April 26, 2023, CUL sent Amazon an email on May 10, 2023, stating ". . . we would like to hear your further confirmation that the total sum could be received within 45 days of your receipt of our invoice." (SAC ¶ 23). Amazon responded, "In terms of the payment confirmation date, Amazon will pay undisputed outstanding invoices per the contract payment terms; which are 45 days." (SAC ¶ 24).

On June 7, Amazon sent CUL a ***superseding*** notice of termination for cause (the "June 7 Notice") due to its discovery of violations of the confidentiality provisions of the MTA. (SAC ¶¶ 25–26). The June 7 Notice[2] explained that CUL violated section 7(2) of the MTA by "using Amazon's trade name, trademark, service mark, logo, commercial symbol, or other proprietary rights without Amazon's prior written consent." (Miller Decl., Ex. C). It further stated that CUL violated Section 7(1) of the MTA and Sections 3, 6, and 7 of the NDA by doing so without prior written consent or notifying Amazon of CUL's unauthorized use. (*Id.*). The June 7 Notice then cited the specific instances of CUL's public use of Amazon's trade name, none of which were with Amazon's prior written consent. (*Id.*) The SAC does not deny these specific instances. (SAC ¶¶ 26–31).

---

[2] The June 7 Notice is incorporated by reference because the Complaint makes clear, definite, and substantial reference to the letter. (SAC ¶¶ 25–26); see also *Stinnett v. Delta Air Lines, Inc.,* 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) ("A document is incorporated by reference if the complaint makes, a clear, definite and substantial reference to the document."). The June 7 Notice is separately integral to the Complaint because the Complaint relies heavily upon it in its claims for breach of contract; indeed, CUL alleges the June 7 Notice was the allegedly "improper" termination for cause fundamental to its second cause of action. (SAC ¶ 42); see *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (a document is "'integral' to the complaint" where the Complaint "relies heavily upon its terms and effect."); see also *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A*., No. 19-CV-5487, 2020 U.S. Dist. LEXIS 81151 (Castel, J.) (S.D.N.Y. May 7, 2020) (finding documents "may properly be considered on a motion to dismiss" where they formed "the basis for [plaintiff's] breach of contract claim").

## III. ARGUMENT

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible," i.e., with sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that the damages claimed are not speculative. *Shafran v. Harley-Davidson, Inc.*, No. 07-CIV-01365 (GBD), 2008 WL 763177, at *2 (S.D.N.Y. Mar. 20, 2008).

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (citations omitted).

In this case, the allegations in CUL's SAC fall flat when read in conjunction with the clear language of the Agreements. For that reason, and as set forth more fully herein, the SAC should be dismissed with prejudice.

### A. CUL's First Cause of Action Fails to Allege Breach of a "Binding Written Agreement" to Terminate.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of

contract by the defendant, and (4) damages." *Callahan v. Global Eagle Ent., Inc.*, No. 18-CV-8343, 2019 U.S. Dist. LEXIS 90822 at *7 (Castel, J.) (S.D.N.Y. May 30, 2019).

Plaintiff's first cause of action alleges that, through the emails exchanged after the April 26, 2023, video conference, the parties reached "a binding written agreement to terminate their relationship, with CUL foregoing the remaining payment due to it under the MTA and Work Order in exchange for the Agreed Termination Amount from Amazon." (SAC ¶ 26). However, this cause of action fails because Amazon simply gave notice of its intent to terminate for convenience as allowed by the MTA. This did not create a new separate contract, nor did it modify or terminate the existing contract, which it could not have done without a **signed** writing to that effect. This is so because the MTA expressly precludes modification or amendment without a signed writing, and CUL does not (and cannot) allege the existence of a signed writing evidencing an amendment or this alleged new "binding agreement." Moreover, even if the MTA did not require written and signed modifications, the email exchanges relied upon by CUL do not evidence the formation of a new separate contract under New York law.

> 1. <u>CUL's first breach of contract claim fails because the parties' underlying agreement requires any modifications to be signed, and CUL does not allege the new "binding written agreement" was signed.</u>

CUL has not alleged satisfaction of the conditions necessary to form this so-called second contract it now alleges existed. The string of communications between the parties regarding Amazon's notice of intent to terminate for convenience under the MTA was not an amendment signed by the parties but rather was merely a notice of intent to exercise a then-existing right under the MTA.

"Where a contract provides a procedure for amending contract provisions, that procedure must be followed to execute a valid amendment." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411–12 (S.D.N.Y. 2011) (strictly enforcing dual requirements that

modifications be in writing and signed by all parties and that they be accompanied by certain related rating agency commitments) (citing *John St. Leasehold LLC v. F.D.I.C.*, 196 F.3d 379, 382 (2d Cir. 1999) (New York law enforces contractual requirements that amendments be in writing and signed by the parties)); *AVS Techs., Inc. v. Sterling Natl. Bank*, 2020 N.Y. Slip Op. 32208, 2020 N.Y. Misc. LEXIS 3208, *14 (N.Y. Sup. Ct. 2020) ("if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed.").

The original MTA remained fully in effect after Amazon provided notice of its intent to terminate for convenience. (Miller Decl., Ex. B) ("*Termination for convenience*. Either party may terminate this Agreement or a Work Order for convenience by providing at least 90 days' written notice."). By arguing otherwise, CUL ignores Section 13(7) of the MTA, which requires a written instrument signed by a duly authorized agent of each party to alter the terms of the MTA. Thus, the plain terms of the MTA preclude CUL's argument that a new "*binding* written agreement" was formed by Amazon's exercise of a pre-existing contractual right under the MTA. *AVS Techs., Inc.*, 2020 N.Y. Misc. Lexis 3208 at *14, 16 (dismissing breach of external unsigned "agreement" where underlying agreement contained a provision that required amendments be in signed writing). CUL has not alleged (and could not allege) that the exchanged emails were a written instrument signed by a duly authorized agent of both Amazon and CUL.

As a result, the Court should dismiss CUL's first cause of action for breach of contract.

    2.    <u>CUL's first breach of contract claim also fails because there was no "binding written agreement" capable of being breached.</u>

In the context of breach of contract claims, "failure to set forth 'the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated'" mandates dismissal. *Wasitowski v. Pali Holdings, Inc.*, No. 09-CV-8243, 2010 U.S.

Dist. LEXIS 37802, *16–17 (Castel, J.) (S.D.N.Y. April 8, 2010) (citing *Broughel v. Battery Conservancy*, 2009 U.S. Dist. LEXIS 35048, 2009 WL 928280, at *5 (S.D.N.Y. Mar. 30, 2009) ("A breach of contract claim will withstand a motion to dismiss only if plaintiff allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.")). Whether writings exchanged by parties constitute a contract is a matter of law. *New Hampshire Ins. Co. v. Wellesley Cap. Partners, Inc.*, 200 A.D.2d 143, 146, 612 N.Y.S.2d 407 (1st Dep't 1994). "In considering whether a binding contract exists, the first step is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.,* 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021) (citation omitted).

CUL alleges that Amazon's correspondence on April 26, 2023, was a "written offer." (SAC ¶ 35). But this purported "offer" was too vague and uncertain to constitute an offer under New York law. Indeed, CUL does not (and cannot) allege the supposed material terms the "offer" contained. Without explanation, CUL describes an amount labeled "Cost due to CU Line" as the "Agreed Termination Amount." (SAC ¶ 22). However, CUL does not (and cannot) actually allege that Amazon "agreed" to a "termination amount". The April 26 "offer" contained no definite dollar figure offered, no terms of acceptance, nor a timeline for performance or delivery of payments. *Joseph Martin Jr., Delicatessen, Inc. v. Schumacher*, 436 N.Y.S. 2d 247, 249, 417 N.E. 2d 541 (1981) ("definiteness as to material matters is of the very essence of contract law. Impenetrable vagueness and uncertainty will not do."). Thus, there was no "sufficiently definite offer" capable of creating an enforceable contract upon its unequivocal acceptance. *Lamda Sols. Corp.*, 574 F. Supp. 3d at 214 (dismissing breach claim because defendant's statement "confirm[ing] its interest in proceeding with the transaction" was not "sufficiently definite.").

CUL also fails to plead an acceptance of the alleged offer. The May 10, 2023 email, which CUL claims constituted its acceptance, is insufficient because it fails to evidence that the parties were in agreement as to "all material terms." *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 470 (E.D.N.Y. 2012) ("[T]here must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."). Because the May 10, 2023 email evidences significant uncertainty as to the ultimate termination fees, it cannot be deemed a proper acceptance:

> "[f]or the **official reconciliation and request of the final numbers, we will be in touch in due course** following the last day of the Term which is June 30th. **For the avoidance of doubt, we would like to hear your further confirmation** that the total sum could be received within 45 days of your receipt of our invoice."

(SAC ¶ 23) (emphasis added). This response articulates that the numbers were not "final," that CUL would "be in touch" following the last day of the term and that CUL sought "further confirmation" about the timing of payment. The material terms were left for future consideration. *See Joseph Martin, Jr.*, 52 N.Y.2d at 109 (A "mere agreement to agree, in which a material term is left for future negotiations, is unenforceable").

CUL's alleged "acceptance" of the proposal was therefore not "clear, unambiguous and unequivocal." *Pinto-Thomaz v. Cusi*, No. 15-CV-1993, 2015 U.S. Dist. LEXIS 158518, *28 (Castel, J.) (S.D.N.Y. Nov. 24, 2015) (dismissing breach of contract claim where alleged "acceptance" did not articulate agreement as to the transfer of items, the parties had not "agreed upon 'all essential terms'" and was therefore not a "meeting of the minds") (citations omitted). Thus, not only was this allegedly new contract precluded by the plain terms of the MTA's requirements, but the communications between the parties also fail as a matter of law to establish a new contract.

Therefore, CUL's first cause of action for breach of contract should be dismissed.

### B. CUL's Second Cause of Action Fails Because Unambiguous Provisions of the Agreements Allowed for Termination for Cause.

CUL's publication of Amazon's trade name and the parties' business relationship unambiguously violated confidentiality obligations under the Agreements, granting Amazon the right to immediately terminate CUL for cause. Therefore, Amazon's June 7 Notice was not in breach of the Agreements. CUL urges a different interpretation of the Agreements to find that its conduct did not violate the relevant provisions, and therefore Amazon's June 7 Notice terminating CUL for cause was improper. CUL's interpretation is without merit and sits in contrast with the clear language of the Agreements.

At the motion to dismiss stage, "a district court may dismiss a breach of contract claim only if the terms of the contract insofar as they are material to the dispute are unambiguous." *Callahan*, 2019 U.S. Dist. LEXIS 90822, at *13. However, the mere fact that the Parties disagree on the proper interpretation of the contract does not render the contractual language ambiguous. Ambiguity does not exist "where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Bank of N.Y. Mellon Tr. Co., N.A. v. Gebert*, No. 13-CV-6988, 2014 U.S. Dist. LEXIS 64511, *3 (Castel, J.) (S.D.N.Y. May 9, 2014) (citations omitted); *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 132, 160 (2d Cir. 2003) ("Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation.").

"[A] contract 'must be enforced according to the plain meaning of the language of the contracting parties'" and construed "so as to give full meaning and effect to all of its provisions" and "in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *Gebert*, 2014 U.S. Dist. LEXIS 64511 at *3 (citation omitted).

CUL argues that it did not violate the Agreements because (1) CUL was only restricted to

not disclosing "Confidential Information," (2) CUL's unauthorized use and disclosure of Amazon's trade name and the nature of its business relationship was preceded by Amazon's disclosure of the same information, so the information could not have been "Confidential," and therefore (3) Amazon's termination for cause was thus improper since CUL never breached the agreement. (SAC ¶¶ 26–31).

However, Section 7(2) of the MTA provides:

> ***Publicity*. You will not use Amazon's trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights without Amazon's prior written consent.**

Section 7(2) unambiguously prohibited CUL from publicly using Amazon's trade name without consent. CUL asks the court to disregard the plain meaning of the provision and instead read in a confidentiality requirement where none exists in the relevant contractual language. (SAC ¶ 15). In making this argument, CUL alleges that any other interpretation of the MTA would prohibit it from using Amazon's name "in internal communications and in the ordinary course of business." (SAC ¶ 13). But, as the June 7 Notice makes clear, Amazon terminated the MTA for cause because CUL improperly used Amazon's trade name to publicize its commercial relationship with Amazon. Amazon did not terminate for cause based on internal CUL use of the word Amazon. Obviously such uses necessarily occurred internally at CUL, but it would be absurd to argue those internal uses violated Section 7(2). Moreover, such an argument would ignore the fact that Section 7(2) includes the word "publicity." CUL further alleges that because Amazon previously revealed the parties' commercial relationship, CUL's later disclosures were "not information that reasonably should be considered confidential". (SAC ¶¶ 28–29).

CUL's allegations are without merit because Section 7(2) of the MTA unambiguously prohibits CUL from publicly disclosing Amazon's trade name, without regard to whether Amazon has previously disclosed its relationship with CUL. CUL's proposed interpretation, by contrast

-11-

asks the Court to interpret the Agreements inconsistent with its plain language, rendering multiple other provisions of the Agreements as superfluous or meaningless. Furthermore, other provisions of the Agreement cited in the June 7 Notice gave Amazon the ability to terminate CUL for cause independent of Section 7(2)'s application.

        1.    <u>Section 7(2) unambiguously prevents CUL from disclosing Amazon's trade name without prior written consent.</u>

Section 7(2) of the MTA is unambiguous on its face. It articulates six specific items of information that Amazon requires CUL to obtain prior written approval before publicizing. This is separate and apart from CUL's general obligations to protect "Confidential Information," as defined in the NDA (which includes information that "reasonably should be considered as confidential"). CUL's interpretation would construe Section 7(2) to replace the specific six classes of information precluded from disclosure with the limitations of the more broadly defined "Confidential Information" term.

CUL's only support for its interpretation is that Section 7(2) is in the "Confidentiality" section of the MTA. But Section 7(2) does not reference "Confidential Information," nor does the heading for Section 7, "Confidentiality," indicate that the entirety of Section 7 refers to "Confidential Information." Rather, Section 7(2) specifically deals with "Publicity," and explicitly prohibits exactly what CUL admits it did. Amazon specifically bargained for control over the public use of its trade name by CUL. Both parties were sophisticated businesses when the bargain was struck. CUL simply ignored the prohibition against such use and must suffer the consequences.

Because the NDA's definition of Confidential Information as information that "reasonably should be considered as confidential" is separately addressed in Section 7(1) of the MTA, it would be absurd to read this limitation into the classes of information separately addressed in Section

7(2) of the MTA. *See Gebert*, 2014 U.S. Dist. LEXIS 64511, 2014 WL 1883551, at *3 (Castel, J.) (citations omitted) ("A court should not interpret a contract in a manner that would be absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties."). To do so would render Section 7(2) superfluous because *all* information that "reasonably should be considered confidential" was *already protected* under Section 7(1) of the MTA. But, under New York law, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988) (citations omitted). Here, avoiding such an interpretation requires no more than interpreting the language of Section 7(2) according to its plain and ordinary meaning. Therefore, the Court should decline to follow CUL's strained provision and apply the Agreements as written.

The right to utilize Amazon's trade name is valuable and Amazon is appropriately vigilant in crafting terms of contracts that are stringent in protecting its trade name. Amazon is entitled to and did bargain for this protection in its agreement with CUL, which is a sophisticated commercial enterprise. Amazon expressly limited CUL's ability to use its trade name, and CUL did not comply with those limitations. "Freedom of contract prevails in an arm's length transaction between sophisticated parties, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 359, 128 N.E.3d 128 (2019). Section 7(2) should be read as written, requiring prior written consent before publication of six classes of Amazon's information. Because CUL did not comply with Section 7(2), Amazon's termination for cause was proper and CUL's breach claim fails.

### 2. Other provisions of the Agreements also unambiguously prevented CUL from disclosing Amazon's proprietary information.

In Amazon's June 7 Notice, it cited additional provisions of the Agreements that CUL violated. CUL does not attempt to re-interpret those provisions as it did for Section 7(2). However, those provisions also unambiguously required CUL to gain written consent before disclosing Amazon's trade name publicly without written consent. Violations of these provisions gave Amazon the right to immediately terminate for cause.

Section 7(1) of the MTA states that a violation of the NDA constitutes a violation of Section 7 of the MTA, which triggers Amazon's unilateral and immediate right to terminate CUL for cause. (Miller Decl., Ex. B).

Section 6 of the NDA provides: "You **_will not use any trade name_**, trademark, logo or any other proprietary rights of Amazon (or any of its Affiliates) **_in any manner without prior written authorization of such use_** by a Vice President of Amazon (or its applicable Affiliate)." (Miller Decl., Ex. A) (emphasis added). CUL's conduct violated this term of the NDA because CUL did not obtain prior written authorization before publicizing Amazon's trade name.

Finally, Section 7 of the NDA states: "You will notify Amazon immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of these terms." (*Id.*). CUL violated this section by never informing Amazon of its unauthorized use and disclosure of Amazon's trade name and the parties' commercial relationship.

CUL does not expressly address its violations of any of these provisions of the NDA. CUL only argues that "Confidential Information excludes information that 'is or becomes publicly available without breach of these terms.'" (SAC ¶ 9). But the NDA prohibits more than the disclosure of confidential Amazon information. It extends to disclosure of Amazon's trade name in public without written permission.

Under the plain terms of the NDA, CUL was not entitled to disclose the parties' relationship, regardless of whether Amazon first disclosed it. Additionally, CUL was never entitled to publicize Amazon's trade name.

## IV. **CONCLUSION**

For all these reasons, the Court should dismiss CUL's Second Amended Complaint. Because CUL has already been given an opportunity to amend its complaint, dismissal should be with prejudice. *See Al-Qadaffi v. Servs. for the Underserved*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[plaintiff] already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 Fed. Appx. 31 (2d Cir. 2016); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) (dismissing amended complaint with prejudice where the "[p]laintiff has already been given one opportunity to amend his complaint . . ., and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity").

Dated: Newark, New Jersey  K&L GATES LLP
April 1, 2024

By: /s/ Benjamin I. Rubinstein
Benjamin I. Rubinstein
Benjamin.Rubinstein@klgates.com
599 Lexington Avenue
New York, New York 10022
Telephone: +1 212 536 3900
Facsimile: +1 212 536 3901

Jeffrey C. Johnson, admitted *pro hac vice*
jeff.johnson@klgates.com
925 4th Avenue
Suite 2900
Seattle, WA 98104
Telephone: +1 206 623 7580

Attorneys for Defendant