**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHINA UNITED LINES, LTD,

               Plaintiff,

     v.

AMAZON.COM SERVICES LLC,

               Defendant.

Civil Action No. 1:23-cv-10313-PKC

**<u>PLAINTIFF CHINA UNITED LINES, LTD'S MEMORANDUM IN OPPOSITION TO
DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND …………………………………………1

I.  LEGAL STANDARD …………………………………………………………………6

II.  ARGUMENT …………………………………………………………………………8

  **A.**  CUL Has Sufficiently Alleged Amazon's Breach of the MTA and Work Order (Count II) …………………………………………………………………………......8

    1.  The Relevant Provisions of the Agreements Are, At Best For Amazon, Ambiguous As To Amazon's Basis for its Purported "Termination for Cause" ……………………9

      i.  CUL's Interpretation of the Agreements is Reasonable …………………………10

      ii.  Amazon's Interpretation of the Agreements is Unreasonable……………………11

      iii.  At The Very Least, The Parties' Competing Interpretations Render the Agreements Ambiguous, Precluding Dismissal …………………………………...15

  **B.**  CUL Has Sufficiently Alleged Amazon's Breach of a May 2023 Contract to Terminate the Parties' Relationship (Count I) …………………………….………17

    1.  CUL Has Alleged a "Binding Written Agreement" In Place Prior to the Purported "Termination For Cause" …………………………………………………………..18

    2.  The Parties Did Not Modify Their Agreement – They Reached A New One To Terminate The Work Order …………………………………………………………...21

III.  IF THE COURT GRANTS THE MOTION TO DISMISS, CUL SHOULD BE GRANTED LEAVE TO AMEND. …………………………………………………...22

IV.  CONCLUSION...…………………………………………………………………23

**TABLE OF AUTHORITIES**

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 128 N.E.3d (2019)……………14, 15

*Almah LLC v. AIG Emp. Servs., Inc.,* 157 A.D.3d 416, 68 N.Y.S.3d 429 (N.Y. App. Div. 1st Dept. 2018)……………………………………………………………………………………..8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………6

*AVS Techs., Inc. v. Sterling Nat'l Bank*, 2020 N.Y. Slip Op. 32208, 2020 N.Y. Misc. LEXIS 3208 (N.Y. Sup. Ct. 2020)………………………………………………………………...21, 22

*AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.*, 241 Fed Appx. 718 (2d Cir. 2007)……………………………………………………………………...........................................10

*Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Gebert*, No. 13-CV-6988 (PKC), 2014 U.S. Dist. LEXIS 64511 (Castel, J.) (S.D.N.Y. May 9, 2014)……………………………………….....12, 14

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)…………………………………………………...6

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375 (S.D.N.Y. 2011)….……21

*B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727 (Fed. Cir. 1988)………….. 19

*Callahan v. Glob. Eagle Entm't, Inc.*, No. 18-cv-8343 (PKC), 2019 U.S. Dist. LEXIS 90822 (Castel, J.) (S.D.N.Y. May 30, 2019)…………………………………….....................................7, 10, 12

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110 (2d Cir. 2014)…........7

*Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568 (2d Cir. 1993)……………………..8

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)…………………………...22

*Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459 (E.D.N.Y. 2012)………………………………………………………………………………….20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004)…………………………………………………………………………………………….7

*Everdry Mktg. & Mgmt. v. Delves & Giufre Enters.*, 319 F. Supp. 3d 626 (W.D.N.Y. 2018)..…19

*Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23 (2d. Cir. 1988)………………………………14

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002)……...………7

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.,* No. 08-CV-761C, 2010 U.S. Dist. LEXIS 45122 (W.D.N.Y. May 5, 2010)……………………………………………...12

*Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher,* 52 N.Y.2d 105, 110, 436 N.Y.S.2d 247, 250, 417 N.E.2d 541, 544 (1981)………………………………....................................19

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.,* 574 F. Supp. 3d 205 (S.D.N.Y. 2021)…………..20

*Martin v. New Am. Cinema Grp., Inc.,* No. 1:22-CV-05982 (JLR), 2023 U.S. Dist. LEXIS 26014 (S.D.N.Y. Feb. 15, 2023)………………………………………………………………...7, 15

*Mr. Olympia, LLC v. Ultimate Nutrition, Inc.,* No. 17 CV 1346 (ALC), 2018 U.S. Dist. LEXIS 41000 (S.D.N.Y. Mar. 13, 2018)…………………………...…………………..…..6, 18, 19, 20

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.,* 830 F.3d 152 (2d Cir. 2016)………....7

*Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir. 2015)…………………………....6, 7, 15, 16, 17

*Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635 (S.D.N.Y. 2020)………………………...9, 16

*Photopaint Techs., LLC v. Smartlens Corp.,* 335 F.3d 152 (2d Cir. 2003)……………...…...14

*Pinto-Thomaz v. Cusi,* No. 15-cv-1993 (PKC), 2015 U.S. Dist. LEXIS 158518 (Castel, J.) (S.D.N.Y. Nov. 24, 2015)……………………….....................................................20

*PNC Capital Recovery v. Mech. Parking Sys.,* 283 A.D.2d 268, 726 N.Y.S.2d 394 (N.Y. App. Div. 1st Dept. 2001)……………………….........................................................7, 8

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.,* 487 F.3d 89, 95 (2d Cir. 2007)………………………….................................................................6

*Wasitowski v. Pali Holdings, Inc.,* No. 09-CV-8243, 2010 U.S. Dist. LEXIS 37802 (Castel, J.) (S.D.N.Y. Apr. 7, 2010)……………………………………………………20

*Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.,* No. 23-cv-05262 (LJL), 2023 U.S. Dist. LEXIS 230394 (S.D.N.Y. Dec. 27, 2023)…………………………......................7, 15, 23

## **Rules**

Fed. R. Civ. P. 9(b)……………………………………………………………………..6

Fed. R. Civ. P. 12(b)(6)……………………………………………………………….4, 6

Fed. R. Civ. P. 15(a)(2)………………………………………………………………...22

## <u>Other Authorities</u>

1 Arthur L. Corbin, Joseph M. Perillo, et al., *Corbin on Contracts* § 2.9 (2023)………………..18

11 Samuel Williston, Richard A. Lord, *Williston on Contracts* § 32:5 (4th ed. 2023)……………8

Plaintiff China United Lines, LTD ("CUL" or "Plaintiff") hereby submits its Memorandum in Opposition to the Motion to Dismiss (the "Motion") filed by Defendant Amazon.com Services LLC ("Amazon" or "Defendant").

<u>**INTRODUCTION AND FACTUAL BACKGROUND**</u>

In April of 2022, CUL began providing container shipping services to Amazon pursuant to three documents: the March 29, 2022 Nondisclosure Terms ("NDA"), the April 7, 2022 Main Transportation Agreement (the "MTA"), and the April 29, 2022 Work Order ("Work Order", later amended but without impact on the terms relevant to this dispute). Second Amended Complaint (D.E. 19) ("Complaint") ¶ 8. Subject to certain termination provisions, the term of the parties' relationship, and Amazon's payment obligations under same, was set to last until April 29, 2024. Complaint ¶ 16.

The NDA defines "Confidential Information" as "any nonpublic information relating to Amazon that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential." Complaint ¶ 9. The NDA goes on to exclude as not "Confidential Information" information that "is or becomes publicly available without breach of these terms." *Id.*

Section 7 of the MTA bears the heading "Confidentiality" and incorporates the NDA by reference, adopting the definition of "Confidential Information" set forth in the NDA. Complaint ¶ 10; Ex. B to Declaration of Robert Miller ("Miller Decl.") (D.E. 22-2) at 4. Subsection 7(2) of the MTA bears the undefined subheading "Publicity" and prohibits use of "Amazon's trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights without Amazon's prior written consent." Complaint ¶ 11; Miller Decl. Ex. B (D.E. 22-2) at 4. The MTA does not contain any provision stating that headings and subheadings are without effect and have

1

no meaning. Complaint ¶ 12. The customs and practices of the shipping and transport industry, in which CUL was contracted to provide services for Amazon, necessitate frequent disclosure of the parties whose goods a shipper is transporting and allow for knowledgeable third parties to ascertain the identity of the parties involved even if they are not explicitly disclosed. Complaint ¶ 14. A literal reading of Subsection 7(2) without taking the "Confidentiality" heading into account would require CUL to obtain Amazon's written consent prior to every single use of Amazon's name in connection with providing the contracted shipping services, both to necessary third parties and even internally – such a requirement would grind CUL's operations to a halt and prevent it from providing timely performance of the contracted services. Complaint ¶ 13.

The MTA provides for termination for convenience, and in the event Amazon terminates for convenience the Work Order dictates the method of calculation of damages (the "Early Termination Tender Shortfall" and "Tender Shortfall Liquidated Damages") to which CUL is entitled. Complaint ¶ 17; Miller Decl. Ex. B (D.E. 22-2) at 3. The MTA also provides for termination for cause in certain instances, including in the event of a violation of Section 7 of the MTA. Complaint ¶ 18; Miller Decl. Ex. B (D.E. 22-2) at 3.

On April 1, 2023, Amazon sent CUL written notice of termination for convenience. Complaint ¶ 19. On April 26, pursuant to a written agenda sent by Amazon including the item "Early Termination penalty review", the parties met via video conference and discussed a plan for the winding down and termination of the parties' relationship, including the method of calculation of the damages to be paid to CUL. Complaint ¶¶ 20, 21. Immediately following the video conference, Amazon sent CUL a spreadsheet entitled "CU Lines Ramp Down Plan and Term[1] Cost", which included a monthly calculation of amounts owed to CUL, titled "Cost Due

---

[1] CUL understands "Term" to be short for "Termination".

To CU Line", from May 2023 through April 2024, the remainder of the parties' contracted term.

Complaint ¶ 22. The total proposed "Cost Due to CU Line" on Amazon's spreadsheet was

$31,560,000 (the "Agreed Termination Amount"). Complaint ¶ 22. On May 10, 2023, CUL

responded to Amazon in writing accepting Amazon's proposed payment calculation and the

Agreed Termination Amount, stating the following, with emphasis added to highlight the key

portion of CUL's response:

> In regards of both Tender Shortfall Liquidated Damages and Early Termination Tender Shortfall calculation method & total figure per your attachment, we are on the same page. For the official reconciliation and request of the final numbers, we will be in touch in due course following the last day of the Term which is June 30th. For the avoidance of doubt, we would like to hear your further confirmation that the total sum could be received within 45 days of your receipt of our invoice.

Complaint ¶ 23. On May 18, 2023 Amazon responded to confirm that undisputed invoices would

be paid by Amazon to CUL within 45 days. Complaint ¶ 24.

On June 7, 2023, despite the parties' agreement as to the essential terms of the termination

of their relationship, Amazon sent a letter that it claimed to be a superseding "notice of termination

for cause", and subsequently stated that it would make no payment to CUL. Complaint ¶ 25; Miller

Decl. Ex. 3 (D.E. 22-3). Amazon's purported "termination for cause", as detailed in the June 7

notice, was based on alleged violations by CUL of Section 7 of the MTA and related provisions

of the NDA. Complaint ¶ 26; Miller Decl. Ex. 3 (D.E. 22-3) at 2.

All of the violations claimed by Amazon in its June 7 letter took place after Amazon's own

July 4, 2022 post on WeChat, a massively popular Chinese social media network, in which

Amazon identified CUL as Amazon's business partner and discussed the parties' commercial

relationship, including data pertaining to shipment times and pricing. Complaint ¶ 27; Complaint

Ex. A (D.E. 19-1). The later mentions of Amazon by CUL contain the same or less commercial

detail than Amazon's own prior WeChat post, including one post that contained excerpts of Amazon's own public WeChat post. Complaint ¶ 30.

As a result of Amazon's July 4, 2022 WeChat disclosure of the parties' business relationship, that relationship was not information that "reasonably should be considered confidential" at the time of the complained-of posts by CUL.[2]  Complaint ¶¶ 28, 29. Accordingly, the complained-of conduct by CUL did not, and could not, constitute a breach of the "Confidentiality" section of the MTA and/or of the NDA. Complaint ¶ 31.

On October 2, 2023, following correspondence between the parties' counsel, CUL sent Amazon an invoice for the amount agreed to in May of 2023, but Amazon has not paid CUL. Complaint ¶¶ 34-35.

On information and belief, Amazon sought to end its relationship with CUL in April 2023 because market shipping rates had dropped since the parties entered into the MTA, and Amazon no longer wanted to pay CUL the agreed-upon rates. Complaint ¶ 32. On information and belief, even if Amazon paid CUL the agreed-upon damages amount Amazon would have reaped a substantial net savings. *Id*. Following Amazon's improper "termination for cause" and refusal to pay, CUL took action to mitigate its losses, but still suffered substantially, being forced without basis to essentially shut down its U.S. business with immediate effect. Complaint ¶ 33.

On November 24, 2023, CUL filed its initial Complaint (D.E. 1), which has since been amended with Court approval (D.E. 11, D.E. 19), alleging two alternate counts of breach of contract against Amazon. Following the parties' pre-motion letters, and CUL's filing of the Second Amended Complaint, Amazon has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), claiming

---

[2] In its "notice of termination for cause" Amazon provides a photo of an undated marketing presentation that appears to have been prepared by one of CUL's customers, not CUL, in which Amazon is mentioned in a similarly general fashion.

that CUL's first cause of action fails to allege a binding written agreement to terminate the parties' relationship and that CUL's second cause of action fails because the relevant provisions of the agreements at issue unambiguously allowed for Amazon's purported termination for cause.

Amazon's failure to pay and immediate withdrawal from their business relationship constitute a breach of the parties' May 2023 agreement as to the termination of their relationship, causing CUL to suffer substantial losses in an amount to be proven at trial, and at a minimum, the Agreed Termination Amount. In addition, because CUL has not engaged in conduct entitling Amazon to terminate the MTA for cause, Amazon has breached the MTA by failing to pay what it owed to CUL as laid out in the Work Order. Despite its protestations as to the value of its name, and its careful bargaining for control over same, Amazon's own public disclosure of its relationship with CUL puts the lie to those protestations. Amazon's motivation in attempting to "terminate for cause" was not to protect its name, but to avoid living up to its end of its bargain with CUL, whether in the MTA or in their May 2023 agreement to terminate. With respect to both Counts in the Complaint, CUL has alleged the four requisite elements of breach of contract, and has done so in a facially plausible manner. CUL has put forth a reasonable construction of the agreements at issue, and Amazon's interpretation of the relevant provisions does not conclusively refute CUL's own. Because, at the very least, multiple reasonable interpretations exist, the agreement terms are ambiguous as a matter of law. While both parties have their arguments as to how this case should be disposed on the merits, now is not the time for the Court to make that determination. The factual record can and should be further explored and established for the Court through the discovery process. The Motion to Dismiss must be denied.

# I.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Twombly* at 556). The plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly* at 556. In considering a motion to dismiss, a Court must accept all facts alleged in the Complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 n. 4 (2d Cir. 2015) (finding contract ambiguous and reversing grant of motion to dismiss).

A plaintiff bringing a claim for breach of contract under New York law must establish four elements[3]: "(1) the existence of a contract, (2) plaintiff's performance under the contract, (3) breach by the defendant, and (4) resulting damages." *Mr. Olympia, LLC v. Ultimate Nutrition, Inc.*, No. 17 CV 1346 (ALC), 2018 U.S. Dist. LEXIS 41000, at *5-6 (S.D.N.Y. Mar. 13, 2018) (internal citation omitted). "A contract is not unenforceable 'merely because it expresses the idea that something is left to future agreement' or because all its terms are not 'fixed with absolute certainty.'" *Id.* at *6 (quoting *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 95 (2d Cir. 2007)).

Courts deny motions to dismiss contract claims where material terms of the underlying agreements are ambiguous. The relevant inquiry and impact of a finding of ambiguity was helpfully summarized by Judge Liman:

---

[3] Unlike a fraud claim, there is no requirement to plead a breach of contract with particularity. Fed. R. Civ. P. 9(b).

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "A contract is ambiguous under New York law 'if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* at 156-57 (quoting *Chesapeake Energy Corp.*, 773 F.3d at 114). "[I]f a contract is ambiguous as applied to [the facts that furnish the basis of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim." *Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004)). Where "there are a number of reasonable interpretations of the relevant [c]ontract provisions," the contract is "ambiguous as a matter of law." *Id.* at 297.

*Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, No. 23-cv-05262 (LJL), 2023 U.S. Dist. LEXIS 230394, at *14-15 (S.D.N.Y. Dec. 27, 2023); *see also Martin v. New Am. Cinema Grp., Inc.*, No. 1:22-CV-05982 (JLR), 2023 U.S. Dist. LEXIS 26014, at *14-15 (S.D.N.Y. Feb. 15, 2023) (identifying ambiguity and denying motion to dismiss breach of contract claim). "[I]n deciding whether an agreement is ambiguous[,] courts 'should examine the entire contract and consider the relation of the parties and the circumstances under which [the contract] was executed. Particular words should be considered[], not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.'" *Callahan v. Glob. Eagle Entm't, Inc.*, No. 18-cv-8343 (PKC), 2019 U.S. Dist. LEXIS 90822, at *7-8 (Castel, J.) (S.D.N.Y. May 30, 2019) (internal citation omitted).

In the absence of a provision to the contrary, headings and subheadings are to be considered and given meaning in interpreting a contract. *See, e.g.*, *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 85 (2d Cir. 2002) (agreeing with District Court finding that the title of a clause was relevant to and supported a particular interpretation of that clause); *PNC Capital Recovery v. Mech. Parking Sys.*, 283 A.D.2d 268, 270-71, 726 N.Y.S.2d 394, 397 (N.Y. App. Div.

1st Dept. 2001) (pointing to heading in interpreting contract in order to give meaning to all of its terms); *see also* 11 Richard A. Lord, *Williston on Contracts* § 32:5 (4th ed. 2023) ("To the extent possible, and except to the extent that the parties manifest a contrary intent, by stating, for example, that recitals or headings are not to be considered or given effect in determining the meaning of their agreement, every word, phrase or term of a contract must be given effect. . . . An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").

If the Court finds that an agreement is ambiguous, it must permit the matter to proceed to discovery to allow for the examination of extrinsic evidence to determine the intent of the parties. *See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir. 1993) (finding ambiguity and reversing grant of summary judgment, noting "Where reasonable minds could be said to differ because the language the parties used in their written contract is susceptible to more than one meaning—each as reasonable as the other—and where extrinsic evidence of the parties' actual intent exists, it should be submitted to the trier of fact.")*; see also Almah LLC v. AIG Emp. Servs., Inc.,* 157 A.D.3d 416, 416, 68 N.Y.S.3d 429, 430 (N.Y. App. Div. 1st Dept. 2018) (reversing dismissal upon finding of ambiguity, noting that if ambiguity is found a complaint should not be dismissed before the development of a full factual record as to the parties' intent).

## II.    ARGUMENT

### A.    CUL Has Sufficiently Alleged Amazon's Breach of the MTA and Work Order (Count II)

In the Complaint, CUL plausibly alleges the four elements of Amazon's breach of the MTA and Work Order under New York law:

(i)     "the existence of a contract": CUL pleaded that the parties entered into the MTA, the Work Order, and the NDA, with Amazon paying CUL for shipping services over a term set to expire in April of 2024 (Complaint at ¶¶ 8, 16), and outlined the

payments owed to CUL in the event of Amazon's termination for convenience (Complaint ¶¶ 17, 22);

(ii)    "plaintiff's performance under the contract": CUL pleaded that it performed its obligations under the terms of the parties' MTA and Work Order (Complaint ¶ 43), and specifically denies with supporting documentary evidence Amazon's allegation that CUL committed any breaches of Section 7 of the MTA or of the NDA (Complaint at ¶¶ 27-31);

(iii)    "breach by the defendant": CUL pleaded that Amazon breached the MTA and Work Order with its improper "termination for cause" and its refusal to pay the amount owed to CUL (Complaint ¶¶ 25 34, 35, 44, 45); and

(iv)    "resulting damages": CUL pleaded that it has suffered damages in the loss of the amount owed to it under the MTA and Work Order, and additional damages associated with the unexpected and immediate need to shut down its U.S. operations (Complaint ¶¶ 22, 28, 33), all due to Amazon's failure to  continue with the MTA and Work Order.

Amazon's Motion to Dismiss appears to challenge only the sufficiency of element (ii) above.

## 1.   The Relevant Provisions of the Agreements Are, At Best For Amazon, Ambiguous As To Amazon's Basis for its Purported "Termination for Cause"

In order for Amazon to prevail on its motion to dismiss, it must demonstrate that its interpretation is unambiguously the one to which the parties agreed, and that CUL's interpretation is conclusively refuted by the relevant terms. Amazon has failed to meet its burden. *See Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) (denying motion to dismiss and finding breach of contract sufficiently alleged where plaintiffs offered a "reasonable construction" of the agreement at issue). At best, Amazon demonstrates in its Motion only that there may be two (or more) reasonable interpretations of the terms in the agreements at issue, making them ambiguous as a matter of law, requiring that the Court resolve that ambiguity in CUL's favor at this time and dismiss Amazon's Motion so that discovery can assist in resolving that ambiguity with finality.

i.   <u>CUL's Interpretation of the Agreements is Reasonable</u>

The NDA was executed separately and prior to the MTA and Work Order, but its terms, including its definition of (and specific exclusions from) "Confidential Information", are incorporated into Section 7 of the MTA, which is titled "Confidentiality". Complaint at ¶¶ 9, 10; Miller Decl. Ex. B (D.E. 22-2) at 4. Following the NDA's definition of "Confidential Information" and the references to that subject matter in the relevant agreement terms, CUL contends that any restriction on the use of Amazon's name (which, if taken in isolation would be unworkable for any shipping company operating in the real world) is limited to circumstances in which the use of that name would constitute disclosure of Confidential Information.  When one takes the obligation as a whole into account, CUL's interpretation of the relevant agreement terms gives meaning to the headings and subheadings, and attempts to practicalize otherwise unreasonable provisions given those headings and subheadings. Subsection 7(2) of the MTA and Section 6 of the NDA, when isolated from the context of the agreements, would give Amazon absolute authority to terminate the parties' relationship on a whim as a result of any use of Amazon's name, whether internal at CUL or externally, without written permission from an Amazon Vice President. CUL's interpretation, which establishes limitations that incorporate the Section 7 heading "Confidentiality" Subsection 7(1)'s incorporation of the NDA's definition of "Confidential Information", and which gives meaning to the NDA Section 6 heading "Ownership of Confidential Information", is preferable to Amazon's, which, given the customs and practices of the shipping industry, which necessitates disclosure of the identity of a shipper by the shipping company in a number of contexts, would render much of the agreements "absurd or commercially unreasonable." *Callahan*, 2019 U.S. Dist. LEXIS 90822 at *9; *see AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.*, 241 Fed Appx. 718, 720-721 (2d Cir. 2007) (looking to

reinsurance industry customs and common practices and determining that plaintiff's interpretations of contract provisions were reasonable and reversing lower court dismissal of breach of contract claims). Therefore, given this reasonable interpretation, the Court should accept, at least for the purposes of this Motion, CUL's assertion that it did not breach the agreements at issue as true.

ii. <u>Amazon's Interpretation of the Agreements is Unreasonable</u>

In contrast to CUL's interpretation, Amazon's interpretation of the agreements at issue in the Motion reads Amazon's chosen provisions in the abstract, ignoring the context of the agreements and the parties' overall business arrangement and discounting the relevance of the definition of "Confidential Information" that sets an overall reasonable limit on otherwise draconian restrictions that it admits would be absurd if applied to their logical ends. This approach ignores the overall context of the agreements, results in unresolvable contradictions between provisions, and is commercially unreasonable. Amazon excerpts provisions of the MTA and NDA and argues for an interpretation that would, viewed in the abstract and out of context, completely hamstring CUL and prevent it from timely providing the very shipping services the agreements obligated it to provide. In particular, Section 6 of the NDA, if read according to Amazon's interpretation, would purport to require written approval from a Vice President of Amazon for <u>each</u> <u>and</u> <u>every</u> <u>single</u> <u>use</u> of Amazon's name by CUL, in any context.  Motion (D.E. 21) at 14. Amazon now claims that arguing that internal uses of Amazon's name without explicit permission "would be absurd", but the plain language of the NDA does not contain any such carveouts, and because Section 7(1) of the MTA deems any violation of the NDA a violation of the MTA, any such carveout would run up against the NDA's terms. Motion (D.E. 21) at 11. Amazon also ignores CUL's point, alleged in the Complaint, that there are a number of disclosures of Amazon's name

11

to third parties that would be necessary in the course of its provision of the shipping services – for instance, to booking agents, to customs brokers, to trucking and warehouse personnel, and on bills of lading. Indeed, the realities of the shipping industry are such that the parties' relationship would be nearly impossible to keep wholly confidential from such third parties. Such disclosures would not be unanticipated to either party, as Amazon is no stranger to global shipping, yet, under an isolated reading of the provisions at issue, would be treated as violations without written approval for each and every disclosure. Reading the agreements according to CUL's interpretation, given the customs and common practices of the shipping industry, would not be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties" – to follow Amazon's interpretation would be. *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Gebert*, No. 13-CV-6988 (PKC), 2014 U.S. Dist. LEXIS 64511, at \*3 (Castel, J.) (S.D.N.Y. May 9, 2014); *see also Callahan*, in which this Court followed one side's interpretation to its logical conclusion, found that "[s]uch an outlandish consequence could not have been the intent of the parties," and declined to read the subject contract in such an "absurd [and] commercially unreasonable" manner. 2019 U.S. Dist. LEXIS 90822, \*23-24. The same is the case here.

To rationalize its suddenly-flexible interpretation of Subsection 7(2) of the MTA, Amazon falls back on a limitation it purports is created by the Subsection 7(2) subheading "Publicity", which is not defined and thus, in and of itself ambiguous. *See Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.,* No. 08-CV-761C, 2010 U.S. Dist. LEXIS 45122, at \*9 (W.D.N.Y. May 5, 2010) (denying summary judgment even after introduction of extrinsic evidence due to ambiguous undefined term, rejecting defendant's argument that their preferred definition was present by implication, and finding that plaintiff's interpretation was reasonable based on that ambiguity). In doing so, Amazon ignores the Section 7 heading "Confidentiality", which, coupled

with the incorporation of the NDA in Subsection 7(1), ties Section 7 to the parameters and definition of Confidential Information established in the NDA. Miller Decl. Ex. B (D.E. 22-2) at 4. Depending on the nature and extent of any of the above disclosures to third parties, Amazon could unilaterally determine such disclosures to be "Publicity" and consider CUL in breach for doing the job it was contracted to do, nevermind that Section 6 of the NDA does not contain any such limitation to the undefined "Publicity", and Subsection 7(1) states that any violation of the NDA triggers termination for cause, rendering any limitation conveyed by the Subsection 7(2) subheading effectively meaningless. Amazon also conveniently omits that Section 6 of the NDA is titled "Ownership of Confidential Information", again setting an understandable and reasonable limitation on the uses of Amazon's name that should be considered violative. Miller Decl. Ex. A (D.E. 22-1). That is, since Amazon's relationship with CUL was already known publicly by that time, Amazon no longer had "ownership" of that information such that CUL could violate it.[4]

Viewing the agreements as a whole given their fundamental purpose, and taking Amazon's interpretation to its logical end, a reasonably intelligent person familiar with the customs and practices of the shipping industry would find Amazon's interpretation of the relevant terms to be commercially unreasonable and would find those terms to be ambiguous. Amazon now contends that certain logical outcomes of their interpretation would be "absurd", and CUL of course agrees, but those absurdities are not resolved in the plain language of the relevant provisions when those provisions are taken in isolation as Amazon asks the Court to do. Discovery is necessary to

---

[4] Amazon has argued that their own disclosure of the parties' business relationship had no bearing on CUL's own ability to do so. Motion (D.E. 21) at 2-3. Setting aside that CUL did not make trademark use of Amazon's name and is claiming no intellectual property or other right in that name, Amazon's interpretation places Section 6 of the NDA, which by its own heading concerns "Ownership of Confidential Information", squarely at odds with Section 1 of the NDA, which provides that information that "is or becomes publicly available without breach of these terms" is <u>not</u> Confidential Information, thus excluding it from the NDA and Section 6 of same. Complaint at ¶ 10. This conflict in terms is yet another ambiguity that necessitates discovery as to the parties' intent to assist the Court in making a determination.

determine the parties' intents, in particular whether Amazon intended that CUL be at Amazon's whim as to whether a given necessary disclosure of Amazon's name in the course of fulfilling its obligations would be considered a "breach" and grounds for "termination for cause". Discovery is also necessary to determine whether CUL understood that it was entering into such an onerous arrangement, particularly given that the NDA was a boilerplate agreement executed separately and prior to the MTA and the Work Order, and, to a lesser extent, given that English is not the native language of many if not all of the CUL personnel involved.

The decisions Amazon cites in its support either in fact support CUL's position or are distinguishable.  In *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Gebert*, this Court declined to credit one competing interpretation of a forum selection clause because it read a phrase out of the contract – here, CUL's interpretation attempts to incorporate and harmonize several portions that would otherwise be incompatible, whereas Amazon's interpretation would give no effect to certain portions, in particular to section headings and subheadings. 2014 U.S. Dist. LEXIS 64511, at *11-12. In *Photopaint Techs., LLC v. Smartlens Corp.*, the Second Circuit focused on multiple confirmatory letter agreements that clarified and supported one party's interpretation over the other – here, no such repeat confirmatory agreements exist. 335 F.3d 152, 161 (2d Cir. 2003). In *Garza v. Marine Transp. Lines, Inc.,* the Second Circuit in fact found ambiguity in the contract when it was viewed in the light most favorable to appellant, overturning the lower court's grant of summary judgment. 861 F.2d 23, 28 (2d. Cir. 1988) (noting that the interpretation offered by the appellant "[was] not compelled by the language or layout of the contract but [was] far from impossible", which sufficed to establish ambiguity).  Finally, in *159 MP Corp. v. Redbridge Bedford, LLC*, the only argument offered against summary judgment was that the provision at issue was unenforceable because it was against public policy, but as discussed above, CUL offers more,

14

namely that Amazon's interpretation is commercially unreasonable, CUL's interpretation is reasonable, and, as discussed below, at the very least, these competing theories render the agreements ambiguous and preclude dismissal. 33 N.Y.3d 353, 360, 128 N.E.3d (2019).

> iii.    At The Very Least, The Parties' Competing Interpretations Render the Agreements Ambiguous

While CUL contends that its interpretation of the agreements is reasonable, and Amazon's is wholly unreasonable, if the Court is inclined to find both interpretations reasonable, it must find the agreements ambiguous as a matter of law and deny the motion to dismiss. The Court's analysis in *Zero Carbon Holdings* is instructive. In that case, the Court identified vulnerabilities in the arguments for both parties' interpretations of the contract at issue, one of which rendered at least one clause surplusage, and another reading in a requirement that was not formally present in the agreement, and as a result found the contract to be ambiguous and denied the motion to dismiss, noting that "[a]t this stage of the proceedings, it is not the role of the Court to judge the strength of each of the parties' arguments." No. 23-cv-05262 (LJL), 2023 U.S. Dist. LEXIS 230394, at *17-18 (S.D.N.Y. Dec. 27, 2023). In *Martin*, the Court found that ambiguity as to an obligation the defendant claimed the plaintiff failed to perform prevented a finding that plaintiff had alleged all elements of breach of contract (including that plaintiff performed all of her obligations under the contract). No. 1:22-CV-05982 (JLR), 2023 U.S. Dist. LEXIS 26014, at *16-17 (S.D.N.Y. Feb. 15, 2023). Here, there is, at best for Amazon, ambiguity as to CUL's obligations with respect to the use of Amazon's name, and, accepting CUL's allegations as true, the Court must find that the elements of breach of contract, including CUL's performance of its obligations under the agreements, have been pled. As the Court in *Zero Carbon Holdings* determined, this early stage is not the time for the Court to endorse one interpretation over another. 2023 U.S. Dist. LEXIS 230394 at *18. To quote the Second Circuit in *Orlander*, "[a]s there are a number of reasonable

interpretations of the relevant Contract provisions, they are ambiguous as a matter of law." 802 F.3d at 297.

At the motion to dismiss stage, any contractual ambiguities must be resolved in the plaintiff's favor. *Perks*, 444 F. Supp. 3d at *639-640. Following CUL's interpretation of the agreements, given that the purported "violations" took place after Amazon itself touted its relationship with CUL on its own public WeChat channel on July 4, 2022[5], CUL was not in violation of the terms of the parties' agreements and Amazon did not have a basis for its purported "termination for cause." By virtue of Amazon's July 4 post, the existence of a business relationship between the parties was no longer a fact that "reasonably should be considered as confidential", as it "[became] publicly available without breach of [the NDA's] terms," that is, by disclosure from Amazon itself. As of that July 4 post, the existence of the parties' business relationship could no longer be Confidential Information as defined in the NDA.[6] Indeed, the August 9, 2022 WeChat post Amazon objects to contains an excerpt of Amazon's July 4 post, Amazon's own "publicity" of the parties' business relationship. Regardless of whether it constituted "Publicity", a term undefined in the agreements, CUL's use of Amazon's name solely to refer to the parties' business relationship, in the same manner and on the same platform as Amazon already had, did not constitute disclosure of any information that "reasonably should be considered as confidential" and thus did not violate Subsection 7(2) of the MTA. Further, because the information disclosed

---

[5] One of the violations alleged by Amazon appears to be the use of Amazon's name in a marketing presentation. Complaint at ¶ 30. Based on the photo, for which Amazon provided no source and about which Amazon provided no additional detail, the presentation appears to have been prepared and/or given by one of CUL's customers, and not CUL. Complaint at ¶ 30. Given that the parties' relationship was both publicly disclosed by Amazon as of July 4, 2022, and otherwise readily discernable to knowledgeable parties in the industry, it cannot be said with any degree of certainty that CUL was the source of Amazon's name. Determining the circumstances of this alleged violation is yet another reason for the Court to deny the Motion and allow the case to proceed to discovery.
[6] As soon as the day after Amazon's WeChat post, third-party media outlets ran stories about the Amazon-CUL relationship disclosed by Amazon, further making clear that the information was no longer "Confidential Information."

by CUL did not constitute Confidential Information as defined in the NDA, CUL did not violate Section 6 of the NDA (which, per its heading, governs "Ownership of Confidential Information"), and because no Confidential Information was disclosed, CUL was under no obligation to notify Amazon and thus did not violate Section 7 of the NDA. Given that CUL did not violate any NDA provision, there was no violation of Subsection 7(1) of the MTA. Since none of the subsections of Section 7 of the MTA was violated, Amazon had no grounds to terminate for cause with immediate effect.

As demonstrated above, CUL has stated a claim for Amazon's breach of its obligations under the party's agreements. CUL's interpretation of the relevant provisions is, at worst, reasonable, requiring the Court to deny the Motion. The provisions that Amazon cites in its Motion are, at best, ambiguous as to the conduct Amazon contends is a breach, and the Court cannot dismiss this claim at this early stage on such "insufficient data." *Orlander*, 802 F.3d at 295. To enable the Court to make a sufficiently informed decision, further discovery is warranted to determine the parties' intent as to the terms of the agreements, as well as the circumstances surrounding any alleged breach (to determine whether or not a breach did in fact occur). At this stage, however, CUL has stated a facially plausible claim, and Amazon's Motion must be denied.

B. **CUL Has Sufficiently Alleged Amazon's Breach of a May 2023 Contract to Terminate the Parties' Relationship (Count I)**

With respect to this claim, CUL has also alleged the four requisite elements under New York law and, with the Court accepting the factual allegations as true, has done so in a manner that is plausible on its face:

(i)     "the existence of a contract": the parties reached an agreement to terminate their relationship, with Amazon proposing payment amounts and a method for calculation of same, CUL agreeing to forego additional payment it was owed in exchange for the payment offered by Amazon, and Amazon confirming the timing

17

of payment (Complaint ¶¶ 19-24);

(ii)    "plaintiff's performance under the contract": CUL issued an invoice for the Agreed Termination Amount, and forewent other payment owed to it by Amazon under the MTA and Work Order (Complaint ¶¶ 34, 39);

(iii)    "breach by the defendant": CUL pleaded that it issued an invoice for the Agreed Termination Amount and that Amazon did not pay it and purported to supersede the agreement with an improper termination for cause (Complaint ¶¶ 25, 35, 40); and

(iv)    "resulting damages": CUL pleaded that it suffered damages in the loss of the Agreed Termination Amount owed to it per the parties' agreement, as well as additional substantial losses associated with the shutdown of its U.S. business as a result of Amazon's unexpected and unjustified "termination for cause." (Complaint ¶¶ 33, 41).

Amazon's Motion to Dismiss appears to challenge only element (i) above.

## 1.  **CUL Has Alleged a "Binding Written Agreement" in Place Prior to the Purported "Termination for Cause"**

The fact that "something is left to future agreement" or certain terms are not "fixed with absolute certainty" does not prevent formation of an enforceable contract. *Mr. Olympia, LLC*, 2018 U.S. Dist LEXIS 41000, at *6 (internal citation omitted); *see also* 1 Arthur L. Corbin, Joseph M. Perillo, et al., *Corbin on Contracts* § 2.9 ( ("If an agreement manifests an intention to be a legally operative contract but leaves certain collateral documentation to be executed later—even if the documentation is important—the agreement should be binding so long as it spells out how the documentation is to be prepared."). Here, the Complaint details the essential terms of the parties' May 2023 agreement to terminate their relationship, including the rough amount to be paid to CUL and method of calculation to confirm that amount (provided by Amazon in the "CU Lines Ramp Down Plan and Term Cost" spreadsheet following the parties' video conference), and the timing of payment (45 days from invoicing). Complaint ¶¶ 19-24.

Amazon does not point to any missing material or essential terms, but claims that there is "significant uncertainty" as to the payment amount. In doing so, it conveniently omits a key sentence from the CUL's May 10, 2023 email, namely, "In regards of both Tender Shortfall Liquidated Damages and Early Termination Tender Shortfall calculation method & total figure per your attachment, <u>we are on the same page</u>." Complaint ¶ 23 (emphasis added). A statement that "we are on the same page", a colloquialism commonly understood to indicate agreement[7], as to both the calculation method and the total figure (as per Amazon's attachment) indicates far more certainty than Amazon would have the Court believe. In *Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, the New York Court of Appeals allowed that had the agreement contained a methodology for determining the rent (arguably the most material term in any lease), but no set figure, that would still have been sufficiently definite, as "a rent so arrived at would have been the end product of agreement between the parties themselves." 52 N.Y.2d 105, 110, 436 N.Y.S.2d 247, 250, 417 N.E.2d 541, 544 (1981). Here, the parties were "on the same page" as to the calculation method and total figure, with only an official reconciliation, pursuant to the agreed-upon calculation method, to come. The parties' agreement was not a mere "agreement to agree" – the calculation method was in place, and no substantive negotiations as to the payment amount were forthcoming, just reconciliation. CUL even asked for confirmation of payment timing following its invoice, further indication of their acceptance of Amazon's proposal. Upon CUL's acceptance, the parties had an enforceable contract. *See Mr. Olympia, LLC*, 2018 U.S. Dist. LEXIS

---

[7] *See, e.g.*, https://www.merriam-webster.com/dictionary/on%20the%20same%20page (last visited April 25, 2024) (defining "on the same page" as "agreeing about something (such as how things should be done)"; https://www.collinsdictionary.com/us/dictionary/english/on-the-same-page (last visited April 25, 2024) (defining "on the same page" as "in agreement or in a harmonious working relationship"). "Courts may take judicial notice of facts of universal notoriety, which need not be proved, and of whatever is generally known within their jurisdictions," and "[t]o that end, dictionaries and encyclopedia may be consulted." *Everdry Mktg. & Mgmt. v. Delves & Giufre Enters.*, 319 F. Supp. 3d 626, 632 n.1 (W.D.N.Y. 2018) (quoting *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988)) (taking judicial notice of a dictionary definition in deciding a motion to dismiss).

41000, at *9 (finding that remaining implementation of a collateral matter did not preclude a finding of an enforceable contract between the parties). Amazon assented to this arrangement in its subsequent email.

The circumstances here differ from those in the decisions Amazon cites in support of its position. In *Wasitowski v. Pali Holdings, Inc.*, the complaint at issue did not allege breach of contract and did not even contain the word "contract", let alone any essential terms – here, as discussed above, CUL has laid out the essential terms of the contract it has alleged Amazon breached in Paragraphs 19-24 of the Complaint. No. 09-CV-8243, 2010 U.S. Dist. LEXIS 37802, at *16-17 (Castel, J.) (S.D.N.Y. Apr. 7, 2010). Unlike in *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, where the purported offer was more of a statement of expressed interest (the offeror was "open to" a given arrangement, though it expressed a preference for another approach), Amazon provided concrete financial terms and did not express a preference for another approach in the same breath. 574 F. Supp. 3d 205, 213-14 (S.D.N.Y. 2021). The Court in *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.* (a decision on summary judgment, not a motion to dismiss) found that a contract was formed by the "practical businesspeople" involved, despite the lack of formalities and precise legal language – this Court should find the same here. 887 F. Supp. 2d 459, 470-71 (E.D.N.Y. 2012). Finally, the parties in *Pinto-Thomaz v. Cusi* left several key terms unresolved on both sides, and one side repeatedly and unequivocally stated, and the other side agreed, that the agreement would not be complete until the terms were memorialized in a written, executed contract – here, as detailed above, the parties did not leave any key terms unresolved and there was no agreed-to requirement during the negotiations of a written, executed contract. No. 15-cv-1993 (PKC), 2015 U.S. Dist. LEXIS 158518, at *28-29 (Castel, J.) (S.D.N.Y. Nov. 24, 2015).

## 2.  <u>The Parties Did Not Modify Their Agreement – They Reached a New One to Terminate The Work Order</u>

Amazon claims that the parties were obligated to execute a signed modification, citing to Subsection 13(7) of the MTA but in doing so ignores the start of the relevant sentence, which reads (emphasis added):

> <u>Except as expressly provided in a Work Order</u>, this Agreement may be amended or modified only by a written instrument signed by a duly authorized agent of each party.

Turning to the Work Order, Schedule 3 Section 5(4) of same, titled "Liquidated Damages and Early Termination", provides that "Amazon and LSP, upon mutual written agreement, may terminate this Work Order during the Term." There is no signature requirement in the Work Order, which "expressly provide[s]" that the parties may terminate the Work Order early. The parties agreed in writing to terminate the Work Order, including forming a new agreement as to the payment to be made and the timing of same, and as allowed under the Work Order did not need a signed writing to do so.

Therefore, as set forth above, CUL has sufficiently pled the existence of a new agreement that Amazon breached, and the Court must take such allegations as true. To the extent these terms or documents are in disharmony, that ambiguity is, as discussed in Section I, *supra*, yet another reason for the Court to deny this Motion so that it can make an informed decision.

Again, the decisions cited by Amazon are unavailing due to the different circumstances here. In *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, the underlying agreement had two requirements for any "amendment, modification, termination, or waiver" to be effective, and neither was met – here, termination by written agreement was expressly provided for in the Work Order, a carveout present in the MTA provision that Amazon cites to support its argument. 778 F. Supp. 2d 375, 411 (S.D.N.Y. 2011).  *AVS Techs., Inc. v. Sterling Nat'l Bank* concerned an oral

agreement, which is not the case here, and in any event the parties' agreement to terminate does not run afoul of any contractual requirement – they exercised their prerogative to terminate via mutual written agreement, as provided in the Work Order. 2020 N.Y. Slip Op. 32208, 2020 N.Y. Misc. LEXIS 3208 at *14 (N.Y. Sup. Ct. 2020).

CUL has set forth a reasonable interpretation of the agreements at issue and thus plausibly alleged a claim for breach of contract of the MTA and Work Order (Count II), and it has plausibly alleged a claim for breach of a new contract of the parties' written agreement, allowed under the Work Order, regarding the termination of their new arrangement (Count I). For the foregoing reasons, the Court should deny Amazon's Motion in its entirety.

## III.   IF THE COURT IS INCLINED TO GRANT THE MOTION TO DISMISS, CUL SHOULD BE GRANTED LEAVE TO AMEND

If this Court finds any merit to the substance of Amazon's arguments, which CUL submits that it should not, any dismissal should be without prejudice, and CUL respectfully requests leave to amend its Complaint should the Court see fit. Fed. R. Civ. P. 15(a)(2) directs Courts to "freely give leave when justice so requires." As a result, absent undue delay, bad faith or dilatory motive, repeated failed amendments, undue prejudice, or futility, none of which is present here, in this Circuit it is "the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (allowing leave to replead because that "there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and cure the defect"). Here, the parties have not yet begun fact discovery and, while CUL has amended its Complaint twice, one of those amendments was solely to resolve a jurisdictional question following the Court's Order. Further, other than a conclusory statement that CUL should not be entitled to amend because it has already done so, Amazon has not articulated any

22

reason why a dismissal should be with prejudice, so CUL should be granted leave to amend to cure any defect identified by the Court.

## IV.   <u>CONCLUSION</u>

As demonstrated above, CUL has stated breach of contract claims that are facially plausible. As to the first claim, CUL has stated a facially plausible claim that Amazon breached the parties' May 2023 agreement as to the termination of their relationship. As to the second claim, because the agreements at issue are, at best, ambiguous as to the grounds for and effectiveness of Amazon's purported "termination for cause," and because CUL's interpretation is reasonable, dismissal is not appropriate because at this stage the Court must resolve the ambiguity in CUL's favor. As the Court in *Zero Carbon Holdings* stated, "[a]t this stage of the proceedings, it is not the role of the Court to judge the strength of each of the parties' arguments." 2023 U.S. Dist. LEXIS 230394 at *18. Accordingly, Amazon's Motion to Dismiss (D.E. 20) should be denied in its entirety. The Court should be given the benefit of a full record, including extrinsic evidence demonstrating the parties' respective intents, before making a determination as to CUL's claims. If the Court is inclined to credit Amazon's argument and grant its Motion, CUL respectfully requests that the dismissal be without prejudice and that it be permitted leave to amend the Complaint to address the Court's concerns.

GOTTLIEB, RACKMAN & REISMAN, P.C.

Dated:  April 26, 2024                    S/ Gloria Tsui-Yip
                                         Gloria Tsui-Yip
                                         gtsuiyip@grr.com
                                         Patrick B. Monahan
                                         pmonahan@grr.com
                                         270 Madison Avenue
                                         New York, New York, 10016
                                         (212) 684-3900

                                         *Counsel for Plaintiff China United Lines, LTD*

## **CERTIFICATE OF SERVICE**

I certify that on April 26, 2024 I caused the foregoing document to be filed using the

Court's CM/ECF system and thereby served the document on counsel of record for the

Defendant in this action.


S/ Gloria Tsui-Yip
Counsel for Plaintiff