UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHINA UNITED LINES, LTD., a China
company,

                    Plaintiff,                  23-cv-10313 (PKC)

      -against-                  <u>OPINION AND ORDER</u>

AMAZON.COM SERVICS LLC, a Delaware
limited liability company,

                    Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff China United Lines, Ltd. ("CUL") brings two breach of contract claims

against Amazon.com Services, LLC ("Amazon").  CUL operates a container-shipping business

based in China.  In March and April 2022, the parties entered into a series of written agreements

pursuant to which CUL was to provide shipping services to Amazon.  According to CUL, the

parties agreed in April 2023 that Amazon would terminate the agreements for convenience and

pay a $31,560,000 penalty to CUL.  In June 2023, Amazon then purported to terminate the

agreements for cause and made no further payments, asserting that CUL breached certain

confidentiality provisions.  Count One asserts a breach of contract based on Amazon's failure to

pay $31,560,000 owed for its termination for convenience and Count Two asserts that Amazon

breached the agreements when it wrongfully terminated them for cause.  Jurisdiction is premised

on diversity of citizenship between the China plaintiff and the defendant, which is a citizen of

Delaware and Washington state.

        Amazon moves to dismiss the Second Amended Complaint (the "Complaint" or

"Compl't") pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Amazon principally relies upon the

language of the parties' agreements, which it has filed with substantial redactions. Those redactions cover the definition of the defined term "Confidential Information" as well as a provision relied upon by Amazon that purportedly governs any amendment by the parties. Further, Count Two asserts that Amazon breached its obligations under a separate work order entered into by the parties, but that work order has not been submitted by either party. While a court may properly construe an unambiguous contract on a Rule 12(b)(6) motion, it is axiomatic under New York law that an agreement must be construed in its entirety. The significant redactions, as well as the failure to submit a copy of a work order that is central to Count Two, prevents the Court from interpreting the three interrelated agreements giving rise to CUL's claims. Accordingly, Amazon's motion to dismiss will be denied.

BACKGROUND.

CUL is a container-shipping business based in Shanghai. (Compl't ¶¶ 1, 6.) On April 7, 2022, CUL and Amazon entered into a "Main Transportation Agreement" (the "Main Agreement") and on April 29, 2022, entered into a separate agreement styled as a "Work Order." (Compl't ¶ 8; Miller Dec. Ex. B (ECF 22-2) (Main Agreement).) The parties previously entered into a "Nondisclosure Terms" agreement on March 29, 2022 (the "NDA"). (Compl't ¶ 8; Miller Dec. Ex. B (ECF 22-1).) Section 7(1) of the Main Agreement incorporates the NDA by reference. (ECF 22-2.)

Section 5(2) of the Main Agreement allows for termination for convenience by either party with 90 days' written notice. (Compl't ¶ 17; ECF 22-2.) On April 1, 2023, Amazon sent a written notice to CUL stating that it was terminating the Main Agreement for convenience. (Compl't ¶ 19.) The parties held a video conference on April 26, 2023, the agenda of which included an "Early Termination penalty review." (Compl't ¶¶ 20-21.) After the meeting,

Connor Klosky, who has the job title Amazon Global Transportation Procurement and Strategy Manager, sent CUL a spreadsheet that included a line for "Cost Due to CU Line" with the listed amount of $31,560,000. (Compl't ¶ 22.) In an email of May 10, 2023, CUL responded that "we are on the same page" as to the amount owed and requested confirmation that the amount would be paid within 45 days after receipt of an invoice. (Compl't ¶ 23.) On May 18, 2023, Klosky replied, "In terms of the payment confirmation date, Amazon will pay undisputed outstanding invoices per the contract payment terms; which are 45 days." (Compl't ¶ 24.)

On June 7, 2023, Amazon sent CUL a written "notice of termination for cause," effective immediately (the "Notice of Termination"). (Compl't ¶ 25; ECF 22-3.) The Notice of Termination was expressly directed to the termination of "Work Order (FMC Lanes), CU Lines Service Contract No. C2202362" (the "Work Order") and does not purport to terminate any other agreement. (ECF 22-3.) The Notice of Termination cited CUL's "unauthorized use and disclosure of Confidential Information," including the use of Amazon's "trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights" without Amazon's prior written consent. (Compl't ¶¶ 10-11, 15, 26; ECF 22-3.) Specifically, Amazon asserted that CUL breached the Main Agreement and the NDA when it published posts to the Chinese social-media platform WeChat that referenced Amazon's "strong support" and "long-term contract support" of CUL. (ECF 22-2.)

CUL alleges upon information and belief that when the parties entered into the Master Agreement in 2022, shipping rates were high, but at the time that Amazon sent its termination notices in 2023, prevailing market rates had lowered. (Compl't ¶ 32.) It alleges on information and belief that terminating the agreement "would result in substantial net savings for Amazon," even if Amazon paid the amounts due for termination for convenience. (Compl't ¶

32.)  CUL asserts that it has sustained substantial losses and "was forced to essentially shut down its U.S. business with immediate effect."  (Compl't ¶ 33.)  On October 2, 2023, CUL sent Amazon an invoice for \$31,560,000, which Amazon has not paid.  (Compl't ¶¶ 34-35.)

       The Complaint brings two breach of contract claims under New York law.  Count One asserts that on April 26, 2023, Amazon made a written offer to pay CUL \$31,560,000 to terminate the Main Agreement and/or Work Order for convenience in exchange for foregoing the remaining payments due under the agreements.  (Compl't ¶¶ 37, 41.)  CUL asserts that in its written response of May 10, 2023, it accepted Amazon's offer, and the parties reached a binding written agreement to terminate their relationship for convenience in exchange for Amazon's payment.  (Compl't ¶ 37.)  CUL asserts that it performed under the agreement by foregoing other payments owed by Amazon and that Amazon breached the agreement by failing to remit payment and invoking for-cause termination.  (Compl't ¶¶ 39-40.)  Count Two also alleges breach of contract under New York law, and asserts that CUL performed all obligations required of it by the Main Agreement and Work Order.  (Compl't ¶ 43.)  It asserts that Amazon breached the Main Agreement and Work Order when it wrongfully terminated the two agreements for cause.  (Compl't ¶ 44-45.)

       In support of its motion to dismiss, Amazon has filed substantially redacted versions of the Main Agreement and the NDA, as well as an unredacted version of the Notice of Termination.  (ECF 22.)  Neither party has filed the Work Order or the correspondence that forms the basis of the agreement alleged in Count One.

RULE 12(b)(6) STANDARD

       To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

            In support of its motion to dismiss, Amazon has submitted as exhibits to the Declaration of Robert Miller redacted versions of the Main Agreement and the NDA, as well as an unredacted copy of the Notice of Termination.  (ECF 22.)  Because the Complaint incorporates by reference the documents submitted by Amazon, they are properly considered on a Rule 12(b)(6) motion.  See, e.g., Halebian v. Berv, 644 F.3d 122, 131 n.7 (2d Cir. 2011) ("it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.") (internal quotation marks omitted).

DISCUSSION

I.    The Motion to Dismiss Count One Will Be Denied.

            Amazon urges that Count One does not plausibly allege a breach of contract claim because the Complaint does not identify a binding written agreement between CUL and Amazon to terminate their relationship.  Drawing every reasonable factual inference in favor of the plaintiff, and in the absence of the underlying correspondence that formed the purported

agreement, the Complaint plausibly alleges that the CUL and Amazon agreed that the Work

Order "and/or" Main Agreement would be terminated for convenience in exchange for

Amazon's payment of $31,560,000.

There is no dispute that New York law governs CUL's claims. "The elements of

a cause of action for breach of contract are the existence of a contract, the plaintiff's performance

thereunder, the defendant's breach thereof, and resulting damages." Noto v. Planck, LLC, 228

A.D.3d 516, 516 (1st Dep't 2024) (quotation marks omitted). "[I]n determining whether the

parties possessed the necessary intention to contract, an objective test is generally to be applied."

Wu v. Uber Techs., Inc., __ N.Y.3d __, 2024 WL 4874383, at *5 (N.Y. Nov. 25, 2024)

(quotation marks omitted). "[A] binding contract requires an objective manifestation of mutual

assent, through either words or conduct, to the essential terms comprising the agreement.

Generally, courts look to the basic elements of the offer and the acceptance to determine whether

there is an objective meeting of the minds sufficient to give rise to a binding and enforceable

contract." Id. (quotation marks and internal citations omitted).

Count One asserts that the parties entered into a binding written agreement to

terminate the Main Agreement "and/or" Work Order, and that CUL agreed to forgo remaining

payments owed to it in exchange for the payment of $31,560,000. (Compl't ¶¶ 36-41.) As

described in the Complaint, on April 26, 2023, immediately after a video conference between

Amazon and CUL in which they discussed the termination of their relationship for convenience,

Klosky sent on behalf of Amazon a spreadsheet that included a total "Cost Due to CU Line" of

$31,560,000. (Compl't ¶¶ 20-22.) The Complaint refers to this as a "written offer" of April 26,

2023 and states that Albert Qian on behalf of CUL sent Amazon a "written acceptance" on May

10, 2023, quoting from the CUL email. (Compl't ¶¶ 37, 23.) The CUL email also stated, "For

the avoidance of doubt, we would like to hear your further confirmation that the total sum could be received within 45 days of your receipt of our invoice." (Compl't ¶ 23.)  Amazon's Klosky later replied, "In terms of the payment confirmation date, Amazon will pay undisputed outstanding invoices per the contract payment terms; which are 45 days." (Compl't ¶ 24.)  CUL asserts that it performed its obligations by foregoing other payments owed to it by Amazon and that Amazon breached the agreement by not remitting the agreed-upon payment. (Compl't ¶¶ 39-40.)

First, Amazon urges that the parties' communications about Amazon's termination for convenience "was not an amendment signed by the parties but rather was merely a notice of intent to exercise a then-existing right under the [Main Agreement]." (Def. Mem. 6.)  Amazon urges that the Main Agreement "remained fully in effect" after Amazon provided notice of intent to terminate for convenience. (Id. at 7.)  Amazon asserts that Count One "ignores" section 13(7) of the Main Agreement, which requires a written instrument signed by both parties in order to amend any provision of the Main Agreement. (Id.)

But the Complaint makes no allegations concerning an amendment to the Main Agreement, and instead asserts that the parties entered into a new agreement about the payment of amounts owed to CUL.  To the extent Amazon relies on section 13(7) of the Main Agreement, that provision is not included in the heavily-redacted version of the Main Agreement that was filed by Amazon, which includes only sections 5 and 7, respectively headed "Term and termination" and "Confidentiality." (ECF 22-2.)  Neither party has submitted a version of the Main Agreement that includes section 13(7) or quotes relevant language from the provision.  The Court is unable to determine what effect, if any, section 13(7) has on Count One.  Amazon's motion to dismiss Count One based on the language of section 13(7) will be denied.

Second, Amazon argues that, as a matter of law, the parties did not reach an agreement as to the amount owed to CUL based on Amazon's termination for convenience. Amazon asserts that its purported offer of April 26, 2023 was too vague and uncertain to constitute an offer and that CUL's email of May 10, 2023 was too qualified to constitute acceptance, noting that the email requested "further confirmation" of the sum to be paid "[f]or the avoidance of doubt . . . ."  (Def. Mem. 8-9; Compl't ¶ 23.)

On a Rule 12(b)(6) motion, a court is limited to a complaint's non-conclusory factual allegations and those documents that complaint incorporates by reference.  Neither party has submitted their underlying correspondence, but their communications are paraphrased and selectively quoted in the Complaint.  At the Rule 12(b)(6) stage, the body of the Complaint plausibly alleges an offer of payment by Amazon immediately after the parties' videoconference of April 26, 2023 and an acceptance of the offer by CUL on May 10, 2023.  (Compl't ¶¶ 20-23.) The plausibility of CUL's allegations is bolstered somewhat by Klosky's email of May 18, 2023, quoted in the Complaint, which, in response to CUL's request for confirmation of the payment's timing, stated, "In terms of payment confirmation date, Amazon will pay undisputed outstanding invoices per the contract payment terms; which are 45 days."  (Compl't ¶ 24.)  Klosky's response suggests a meeting of the minds as to termination for convenience and the amount and timing of Amazon's payment.

Amazon's motion to dismiss Count One will be denied.

II.    <u>The Motion to Dismiss Count Two Will Be Denied.</u>

Count Two asserts that CUL performed as required under the Main Agreement and Work Order and did not engage in conduct that permitted Amazon to terminate their relationship for cause.  (Compl't ¶¶ 42-45.)  It asserts that Amazon breached its obligations

under the Main Agreement "and/or" Work Order when it wrongfully terminated them for cause. (Id.)  Amazon urges that this claim should be dismissed because the Main Agreement unambiguously permitted termination based on CUL's public WeChat posts that referred to CUL's work with Amazon.

A court may construe the unambiguous language of a contract when deciding a Rule 12(b)(6) motion.  See, e.g., Subaru Distributors Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005).  "Contracts must be interpreted in their entirety and read them to give effect to all their provisions as a whole rather than focus on isolated words or cherry-picked provisions."  Northern Star Textile, Corp. v. Micro Office Solutions 4 LLC, 215 A.D.3d 426, 427 (1st Dep't 2023) (collecting cases).  "A reading of the contract should not render any portion meaningless.  Further, a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible, it will be so interpreted as to give effect to its general purpose."  AEA Middle Market Debt Funding LLC v. Marblegate Asset Management, LLC, 214 A.D.3d 111, 125 (1st Dep't 2023) (citations and quotation marks omitted).  A party "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest.  A contract should be read to give effect to all its provisions."  God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP, 6 N.Y.3d 371, 374 (2006).

In the Notice of Termination, Amazon stated that it was terminating the Work Order for cause because CUL violated the confidentiality provisions of the NDA and the Main Agreement when it referenced Amazon in its posts to WeChat.  (ECF 22-3.)  It stated that the Work Order was being canceled pursuant to section 5(3) of the Main Agreement and section 1(5) of the Work Order.  (Id.)  The Notice of Termination stated:

> [CUL] violated Section 7(2) of the Agreement by using Amazon's trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights without Amazon's prior written consent. [CUL's] unauthorized use and disclosure of Confidential Information relating to the commercial relationship between Amazon and [CUL], and its failure to notify Amazon of the unauthorized used and disclosure of such Confidential Information, also violates Section 7(1) of the Agreement and Sections 3, 6 and 7 of the NDA.

(Id.)

Amazon argues that Count Two should be dismissed because the unambiguous terms of the Main Agreement and the NDA permit it to terminate the Work Order for cause based on CUL's disclosure of the parties' commercial relationship. Section 7(2) of the Agreement states: "*Publicity*. You will not use Amazon's trade name, trademark, service mark, logo, commercial symbol, or any other proprietary rights without Amazon's prior written consent." (ECF 22-2.) Section 5(3) of the Main Agreement states that "Amazon may immediately terminate all or any part of this Agreement or Work Order upon written notice if you violate . . . Section 7 of these General Terms." (Id.) Sections 5 and 7 are the only portions of the Main Agreement that are not redacted by Amazon. (See id.)

Section 7(1) of the Main Agreement incorporates the NDA by reference. (Id.) Section 7(1) states: "**'Confidential Information'** has the meaning set forth in the NDA." (Id.; emphasis in original.) In the redacted form submitted on this motion by Amazon, the NDA does not include the definition of "Confidential Information." (ECF 22-1; emphasis in original.) Similar to the Main Agreement, section 6 of the NDA, under the heading "Ownership of Confidential Information," provides that CUL "will not use any trade name, trademark, logo or any other proprietary rights of Amazon" without prior written authorization from Amazon. (Id.)

The unredacted excerpts of the NDA capitalize the term "Confidential Information," indicating that the term is defined in the redacted portions of the NDA.

Amazon explains that it is "vigilant" and "stringent" about protecting the use of its trade name and that the Main Agreement and NDA distinguish the use of the Amazon name in connection with publicity from the unauthorized use of Confidential Information. (Def. Mem. 13-14.) In response, CUL notes that Amazon's interpretation affords improper weight to the Main Agreement's heading "Publicity," which is an undefined term, and does not account for the Main Agreement's incorporation of the NDA, which defines "Confidential Information" as "any nonpublic information relating to Amazon that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential" and excludes information that "is or becomes publicly available without breach of these terms." (Opp. Mem. 10-15; Compl't ¶ 9.) CUL advances the alternative interpretation that the NDA's definition of Confidential Information does not apply to its WeChat posts because the "Publicity" provision at section 7(2) must be read alongside the NDA's definition of "Confidential Information." CUL's Complaint partially quotes the NDA's definition of "Confidential Information" (Compl't ¶ 9) but the full definition and its surrounding language are redacted in the version of the NDA filed by Amazon.

Because key terms are concealed by redactions, the Court is unable to construe the Main Agreement and the NDA and determine as a matter of law whether Amazon terminated the Work Order for cause consistent with sections 7(2) and 5(3) of the Main Agreement. The redacted agreements limit the Court to "cherry-picked provisions" rather than considering the agreements "in their entirety and read[ing] them to give effect to all their provisions . . . ." Northern Star Textile, 215 A.D.3d at 427.

Notably, Amazon also has not filed a copy of the Work Order that the Notice of Termination purports to terminate.  Count Two asserts that Amazon wrongfully terminated both the Main Agreement and the Work Order.  (Compl't ¶¶ 43-45.)  The Notice of Termination cites section 1(5) of the Work Order as a basis for termination (ECF 22-3), but without the ability to review the Work Order, the Court is also to determine whether Amazon properly exercised its contractual rights when it terminated the Work Order for cause.

The Complaint and the parties' memoranda reflect that the NDA, Main Agreement and Work Order are closely related and cross-reference their respective terms. Because the NDA and Main Agreement have been submitted with substantial redaction and the Work Order is not before the Court, the Court is unable to construe the agreements consistent with New York law.

The motion to dismiss Count Two will therefore be denied.

CONCLUSION.

The motion to dismiss is DENIED.  (ECF 20.)  The Clerk is respectfully directed to terminate the motion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
         January 17, 2025

- 12 -