**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHINA UNITED LINES, LTD, a China
company,

        Plaintiff,

    v.

AMAZON.COM SERVICES LLC, a
Delaware limited liability company,

        Defendant.

Civil Action No. 1:23-cv-10313-PKC

Hon. Judge P. Kevin Castel

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTIONS IN LIMINE**

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 3

I.    THE COURT SHOULD NOT DEFER RULING ON THRESHOLD LEGAL QUESTIONS ................................................................................................................ 3

II.   EACH OF AMAZON'S MILS SHOULD BE GRANTED BECAUSE THE CONTRACTS ARE UNDISPUTEDLY UNAMBIGUOUS. ..................................... 5

A.    There is no dispute the Contracts unambiguously prohibit CUL from leveraging Amazon's name in marketing and expressly grant Amazon the right to terminate without damages ...................................................................................................................... 5

B.    MIL #1: Extrinsic evidence concerning the parties' subjective unilateral intent cannot alter unambiguous terms of the Contracts. ............................................................. 6

C.    MIL #2, 4: Whether the parties' relationship was confidential, and if not, when and why, is irrelevant because Section 7(2) is not limited to confidential information. .............. 7

D.    MIL #3: Amazon's motivation for terminating for cause is irrelevant because the Contracts provide Amazon the express right to terminate for cause if CUL violated Section 7.    8

III.  THE COURT SHOULD INDEPENDENTLY GRANT MILS # 1, 3, 4 EVEN IF THE CONTRACTS ARE AMBIGUOUS. .......................................................................... 8

A.    MIL #1: A party's unilateral, subjective interpretation of a contract has no probative value where that interpretation was never communicated. ..................................... 8

B.    MIL #3: The only purpose for which CUL seeks to introduce motive evidence is in support of an unpleaded good faith and fair dealing claim. ...................................... 9

C.    MIL #4: CUL failed to properly disclose Jane Jing, offers no good cause for remote testimony, and asserts no hearsay exception or foundation for PX-DDD. ........................... 12

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adore Me, Inc.* v. *NPC Global Corp.*,
No. 18-cv-4498, 2019 WL 2866043 (S.D.N.Y. July 3, 2019)................................................6, 7

*Aircraft Servs. Resales LLC* v. *Oceanic Capital Co.*,
493 Fed. App'x 173 (2d Cir. 2012)....................................................................................8

*Aircraft Servs. Resales LLC* v. *Oceanic Capital Co., Ltd.*,
09 CIV. 8129 PKC, 2013 WL 4400453 (S.D.N.Y. Aug. 14, 2013), *aff'd*, 586
Fed. App'x. 761 (2d Cir. 2014)........................................................................................12

*Augienello* v. *Coast-To-Coast Fin. Corp.*,
64 F. App'x 820 (2d Cir. 2003) .......................................................................................13

*Aviles et al.* v. *Wells Fargo Bank*,
25-312-cv, 2026 WL 1256083 (2d Cir. May 7, 2026)..................................................13

*Baxter Diagnostics, Inc.* v. *Novatek Med., Inc.*,
94-CV-5220, 1998 WL 665138 (S.D.N.Y. Sept. 25, 1998) ........................................15

*Brockhaus* v. *Gallego Basteri*,
188 F.Supp.3d 306 (S.D.N.Y. 2016)..................................................................................7

*Commerce Funding Corp.* v. *Comprehensive Habilitation Servs., Inc.*,
01 CIV. 3796 (PKL), 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004)...........................7

*Highland Capital Mgmt., L.P.* v. *Schneider*,
379 F.Supp.2d 461 (S.D.N.Y. 2005)..........................................................................6, 14

*Holloway* v. *King*,
161 F. App'x 122 (2d Cir. 2005) .......................................................................................9

*Invista B.V.* v. *E.I. Du Pont De Nemours & Co.*,
No. 07 Civ. 713 (WHP), 2008 WL 4865044 (S.D.N.Y. Nov. 5, 2008)....................12

*JA Apparel Corp.* v. *Abboud*,
682 F.Supp.2d 294 (S.D.N.Y. 2010)..................................................................................9

*Klos* v. *Polskie Linie Lotnicze*,
133 F.3d 164 (2d Cir. 1997)..............................................................................................12

*Leaverton* v. *OFI Glob. Institutional, Inc.*,
21-cv-5659, 2022 WL 4133369 (S.D.N.Y. Sept. 12, 2022) .......................................13

*Major Oldsmobile, Inc.* v. *Gen. Motors Corp.*,
    101 F.3d 684, 1996 WL 280452 (2d Cir. 1996) .......................................................11

*Omni Quartz, Ltd.* v. *CVS Corp.*,
    287 F.3d 61 (2d Cir. 2002).........................................................................................7

*Palmieri* v. *Defaria*,
    88 F.3d 136 (2d Cir. 1996)..........................................................................................6

*PRCM Advisers LLC* v. *Two Harbors Inv. Corp.*,
    No. 20-cv-5649, 2021 WL 2582132 (S.D.N.Y. June 23, 2021) .........................................11, 12

*Refinement Int'l Co.* v. *Eastbourne N.V.*,
    815 F.Supp.738 (S.D.N.Y. 1993).............................................................................11

*Spinelli* v. *Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018).........................................................................................6

*United States* v. *Aiyer*,
    33 F.4th 97 (2d Cir. 2022) .........................................................................................15

*W.W.W. Associates, Inc.* v. *Giancontieri*,
    77 N.Y.2d 157 (1990) ..................................................................................................6

*Wechsler* v. *Hunt Health Sys., Ltd.*,
    381 F. Supp. 2d 135 (S.D.N.Y. 2003).........................................................................14

*Wilder* v. *World of Boxing LLC*,
    220 F. Supp. 3d 473 (S.D.N.Y. 2016).........................................................................10

## Other Authorities

Federal Rule Evidence 401–403 .........................................................................5, 10, 15

Federal Rule of Civil Procedure 26 .................................................................................6

**PRELIMINARY STATEMENT**

As CUL frames it, "[t]his case is simple."[1]  On that, the parties agree.  But throughout the course of this litigation, CUL has made this case anything but simple.  CUL has presented and continues to present an ever-changing list of internally inconsistent, procedurally deficient, untimely, and tenuous theories purporting to justify CUL's otherwise clear violation of the plain language of the Contracts, Contracts whose express terms preclude the damages CUL seeks in this action.  And CUL has mischaracterized and continues to mischaracterize Amazon's (and even its own) arguments, the case law, and the record.

Enough is enough.  A bench trial does not provide CUL carte blanche to burden Amazon with defending against whatever new theories CUL can derive in the next two weeks, preparing evidence irrelevant to the issues developed for trial, and entertaining CUL's indecisiveness on what theories it intends to pursue.  Even without a jury, because "[t]his case is simple" so too this trial should be.  The Court should grant Amazon's Motions in Limine ("MILs") to simplify the trial to the relevant factual issues actually in dispute.

CUL's most recent change is emblematic.  Despite here arguing that Section 7's "Confidentiality" heading unambiguously restricts Section 7(2) to promotion of nonpublic information, CUL admits the opposite in its Pretrial Reply Brief.  There, CUL concedes that even "[w]hen Section 7.2 is read in its proper contractual context, within a section titled 'Confidentiality,'" Section 7(2) prohibits **both** "public-facing promotion of nonpublic relationship information **and the exploitation of Amazon's name for marketing leverage**."[2]  CUL's concession underlines the fact that the Contracts' plain language remains clear.  The plain language of Section 7(2) prohibits CUL from promoting Amazon's name, regardless of whether the parties'

---

[1] Pl.'s Pretrial Reply Br. ("PTRB") at 10, Dkt. #74.
[2] *Id.* at 31 (emphasis added).

1

relationship was confidential.  And the plain language of Section 5(3) provides Amazon the express right to terminate without damages if CUL violates Section 7(2) of the MTA.

**Each MIL should be granted because the Contracts are unambiguous.**  Since the plain language of the Contracts is unambiguous, none of the challenged evidence CUL seeks to introduce—purported evidence of internal, subjective beliefs that Section 7(2) only applied to "promotion of nonpublic relationship information" (**MIL #1**), that the parties in fact had a "nonpublic relationship" (and if not, why the relationship was no longer nonpublic) (**MILs #2, 4**), and that Amazon had a financial motive for exercising its express right (**MIL #3**)—have any probative value for any of CUL's asserted purposes.  Amazon's MILs should be granted under FRE 401–403 for this reason alone.

**MILs #1, 3, and 4 should also be granted even if the Contracts are ambiguous:**

**MIL #1** (subjective unilateral intent).  A party's subjective unilateral intent has no probative value in contract interpretation where, as here, it was never communicated to the other party.  CUL's Opposition to the MILs ("Opposition") does not address this argument, offers no other purpose for the evidence, and instead selectively quotes from and mischaracterizes the only authority on which it relies.

**MIL #3** (motive).  The only purported relevance of Amazon's motive goes to an untimely, unpleaded good faith and fair dealing claim that remains unpleaded on the eve of trial, well after the close of fact discovery and the deadline for amending pleadings.

CUL's only excuse for its delay is that it once accused Amazon of bad faith in a letter months before litigation and the implied covenant of good faith and fair dealing inheres in every contract.  While the implied covenant may inhere in every contract, it does not inhere in every complaint asserting a breach of contract.  CUL chose not to plead breach of the implied covenant

and chose not to seek leave to amend its Second Amended Complaint.

**MIL #4** (Jane Jing Testimony and PX-DDD regarding when and why the parties' relationship became non-public).  CUL failed to properly disclose or to identify Ms. Jing in any Rule 26(a) disclosure or interrogatory response, CUL fails to demonstrate why CUL waited until the eleventh hour to request remote testimony (with the added complication of interpretation), and CUL's Exhibit lacks authentication and relies on inadmissible hearsay.

* * *

CUL's repeated pattern of conduct and the minimal, if any, probative value of the challenged evidence demonstrates that the evidence unnecessarily complicates—at Amazon's and the Court's expense—what should otherwise be a straightforward dispute under New York law. The Court should therefore grant Amazon's MILs.

<b><u>ARGUMENT</u></b>

## I.     THE COURT SHOULD NOT DEFER RULING ON THRESHOLD LEGAL QUESTIONS

The purpose of a motion in limine is to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P.* v. *Schneider*, 379 F.Supp.2d 461, 467 (S.D.N.Y. 2005) (quoting *Palmieri* v. *Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

In this action, a key threshold legal question is whether the Contracts are ambiguous. Under New York law, whether a contract is ambiguous is a question of law for the court. *See Adore Me, Inc.* v. *NPC Global Corp.*, No. 18-cv-4498, 2019 WL 2866043, at *2 (S.D.N.Y. July 3, 2019) (quoting *Spinelli* v. *Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018)); *W.W.W. Associates, Inc.* v. *Giancontieri*, 77 N.Y.2d 157, 163 (1990).   And where a contract is

3

unambiguous, its interpretation also is a question of law for the court. *E.g.*, *Omni Quartz, Ltd.* v. *CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). As explained below, the Contracts are unambiguous and thus each of Amazon's MILs should be granted. But even if the Contracts were ambiguous, Amazon's MILs #1, 3, 4 should still be granted for independent reasons.

CUL argues that the MILs are "unnecessary" simply because this case is being adjudicated by bench trial. *E.g.*, Pl.'s Opp'n Amazon's MILs ("Opp'n") at 6, Dkt. #73. But a bench trial does not render inadmissible evidence admissible and is not an invitation to ignore the well-settled substantive law, the rules of evidence, or procedural requirements. Even in a bench trial, pre-trial resolution of clear legal questions—such as questions of contract interpretation—serves to streamline the case, conserve judicial resources, and prevents the unnecessary burden of preparing irrelevant evidence. *Commerce Funding Corp.* v. *Comprehensive Habilitation Servs., Inc.*, 01 CIV. 3796 (PKL), 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) (granting motion in limine to exclude extrinsic evidence offered to alter terms of contract as "irrelevant, such that admitting them even at a bench trial would contravene Rule 401 and serve no purpose.").

Thus, courts in this District grant motions in limine to exclude evidence that is irrelevant to interpretation of the contract, particularly where, as here, the contract is unambiguous. *See, e.g.*, *Adore Me*, 2019 WL 2866043, at *2 (granting motion in limine before a bench trial to preclude the introduction of parol evidence that contradicted the unambiguous terms of the parties' written agreements); *Brockhaus* v. *Gallego Basteri*, 188 F.Supp.3d 306, 314 & n.14 (S.D.N.Y. 2016) (noting pre-bench trial ruling granting a motion in limine precluding extrinsic evidence regarding the meaning of an unambiguous contract).[3]

---

[3] The cases CUL cites do not appear to involve a bench trial where both parties agreed the contract was unambiguous or where New York law made clear that the contract language was unambiguous.

## II.    EACH OF AMAZON'S MILS SHOULD BE GRANTED BECAUSE THE CONTRACTS ARE UNDISPUTEDLY UNAMBIGUOUS.

### A.    There is no dispute the Contracts unambiguously prohibit CUL from leveraging Amazon's name in marketing and expressly grant Amazon the right to terminate without damages.

Consistent with New York law, there is no dispute that interpretation of the Contracts "turns on what the text, read objectively, means . . . written."  PTRB at 30; *accord* Def.'s Pretrial Br. at 54–64 (MILs), at 56, Dkt. #64.  The plain language of Section 7(2) of the MTA expressly prohibits CUL from using Amazon's name without prior written consent, and the plain language of Section 5(3) provides Amazon the express right to terminate without damages if CUL violates Section 7(2).  MILs at 56–57.

CUL argues the Court should deny the MILs because Section 7(2) is ambiguous.  Opp'n at 9.  CUL's argument relies solely on the fact Section 7 has the heading "Confidentiality," which CUL interprets as meaning Section 7(2) only prohibits promotion of nonpublic information.  *Id.*

But CUL's argument is belied by its own Pretrial Reply Brief, admitting that even "[w]hen Section 7.2 is read in its proper contractual context, within a section titled "Confidentiality," Section 7.2 prohibits both "public-facing promotion of nonpublic relationship information and the exploitation of Amazon's name for marketing leverage."  PTRB at 31.  In other words, there is no dispute Section 7(2), at a minimum, unambiguously prohibited CUL from using Amazon's name for marketing leverage, whether or not the parties' relationship was confidential.  Nor could there be.

Under New York law, a provision is ambiguous only if it is "***reasonably*** susceptible to different interpretations."  *Id.* (quoting *Aircraft Servs. Resales LLC* v. *Oceanic Capital Co.*, 493 Fed. App'x 173, 176 (2d Cir. 2012) (emphasis added); *accord* MILs at 56 (citing cases).)  For the reasons explained in Amazon's MILs, CUL's interpretation in its Opposition is unreasonable as a

matter of law: CUL's interpretation contradicts cases finding similar provisions unambiguously prohibited uses regardless of confidentiality and contradicts fundamental principles of contract interpretation, including that headings cannot render unambiguous provisions ambiguous. MILs at 56–57.[4]

For this reason, Amazon's challenged evidence has no probative value in this action and is inadmissible under FREs 401–03:

### B.    MIL #1: Extrinsic evidence concerning the parties' subjective unilateral intent cannot alter unambiguous terms of the Contracts.

Under well-settled New York law, where a contract is unambiguous, "extrinsic evidence regarding the intent of the parties is inadmissible and cannot be considered." *JA Apparel Corp.* v. *Abboud*, 682 F.Supp.2d 294, 302 (S.D.N.Y. 2010); *see also* MILs at 57 (citing cases). This is doubly true where the contract contains a merger provision, which bars admission of the extrinsic evidence to "vary, contradict, or supplement" the Contracts. MILs at 57 (quoting *Holloway* v. *King*, 161 F. App'x 122, 125 (2d Cir. 2005)).

Because Section 7(2)—even when read with Section 7's heading—unambiguously prohibits CUL from leveraging Amazon's name in marketing, extrinsic evidence of CUL or Amazon's unilateral, subjective interpretation of Section 7(2) lack any probative value in

---

[4] CUL's Opposition cites no authority for proposition that Section 7's heading can restrict the meaning of Section 7(2)'s otherwise unambiguous language, relying solely on CUL's Pretrial Reply Memorandum's two cases, both of which are inapposite. (Opp'n at 11 n.2.) In *Infrassure* v. *First. Mut. Transp. Assur.*, the Second Circuit interpreted a contract provision where, unlike here, the provision's body and its heading **both** contained the same restrictive language. 842 F.3d 174, 175–76 (2d. Cir. 2016). The court held that the fact that headings are inoperative does not somehow strip the body of its identical restriction precisely because the "body . . . controls." *Id.* And *Mazzaferro* v. *RLI Ins. Co.*, does not support CUL. 50 F.3d 137, 140 (2d Cir. 1995). That case involved an insurance coverage dispute under Connecticut law where the use of two distinct policy captions confirmed a well-settled insurance distinction between the body text of the two distinct policies. Here, the Contracts' separate subheading distinguishing "Publicity" and the body of the other provisions distinguishing proprietary rights and confidential information confirm that publicity and confidential refer to different things. (*See* Motions in Limine at 56–57.)

interpreting Section 7(2). And because CUL offers no purpose for introducing this extrinsic evidence other than to interpret Section 7(2) and does not dispute that if Section 7(2) is unambiguous, this extrinsic evidence is inadmissible, the Court should grant Amazon's MIL #1. *See, e.g.*, *Wilder* v. *World of Boxing LLC*, 220 F. Supp. 3d 473, 480 (S.D.N.Y. 2016) (granting motion in limine excluding testimony about the parties' "understanding" of contract terms where no ambiguity was identified, explaining that "differing views as to how [a] term should be applied" does not mean the term itself is ambiguous); *Farberware Licensing Co. LLC* v. *Meyer Mfg. Co.*, No. 09-cv-2923, 2009 WL 2710208, at *1 (S.D.N.Y. Aug. 26, 2009) (same).

### C.     MIL #2, 4: Whether the parties' relationship was confidential, and if not, when and why, is irrelevant because Section 7(2) is not limited to confidential information.

Amazon's MIL #2 challenges CUL's introduction of evidence concerning whether the parties' relationship was in fact confidential, and Amazon's MIL #4 challenges evidence concerning when and why, if ever, the parties' relationship became non-confidential, including evidence that Amazon published CUL's name. CUL tends to lose sight of the fact that Section 7(2) only restricts CUL, it is not reciprocal and cannot be used to limit Amazon's actions.  As a result, there can be no dispute that both categories of evidence have probative value in this action ***only if*** the Court interprets Section 7's "Confidentiality" heading to restrict Section 7(2)'s prohibition on use of Amazon's name to circumstances where the parties' relationship was confidential. (*See* Opp'n at 11.) And since Section 7's heading does not restrict Section 7(2) as a matter of law, the confidential nature of the parties' relationship has no probative value in this action and is inadmissible under Rules 401–403.[5]

---

[5] Contrary to CUL's baseless assertion that "Amazon does not cite a single case" in support of MIL #2 (*id.*), Amazon's Motions in Limine, which incorporate Amazon's Pretrial Brief, cite authority after authority making clear that Section 7's heading does not restrict Section 7(2) as a matter of law (Motions in Limine at 58 (citing Amazon's Pre-trial Brief at 18–23 (citing cases))).

**D.      MIL #3: Amazon's motivation for terminating for cause is irrelevant because the Contracts provide Amazon the express right to terminate for cause if CUL violated Section 7.**

Where, as here, the Contracts provide Amazon the express right to terminate for cause, Amazon's motivation for terminating for cause is legally irrelevant to any good faith and fair dealing claim—or any claim properly pending—as a matter of New York law. *See, e.g.*, *JN Contemporary Art LLC* v. *Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) ("[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged."); *PRCM Advisers LLC* v. *Two Harbors Inv. Corp.*, No. 20-cv-5649, 2021 WL 2582132, at *10 (S.D.N.Y. June 23, 2021) ("[A] termination for cause cannot breach the implied covenant, even if motivated by reasons unrelated to cause."); *see also Refinement Int'l Co.* v. *Eastbourne N.V.*, 815 F.Supp.738, 742 (S.D.N.Y. 1993); *Major Oldsmobile, Inc.* v. *Gen. Motors Corp.*, 101 F.3d 684, 1996 WL 280452, at *3 (2d Cir. 1996) (same); MILs at 59–60 (citing cases).

**III.     THE COURT SHOULD INDEPENDENTLY GRANT MILS # 1, 3, 4 EVEN IF THE CONTRACTS ARE AMBIGUOUS.**

**A.      MIL #1: A party's unilateral, subjective interpretation of a contract has no probative value where that interpretation was never communicated.**

Amazon's MIL #1 challenges CUL's introduction of extrinsic evidence concerning each party's own internal, subjective beliefs regarding whether the "Confidential" header in Section 7 qualifies Section 7(2)'s prohibition on publicity, including direct testimony that CUL's "understanding" is that the header qualifies the prohibition. (Motions in Limine at 55.) CUL has offered no purpose for this evidence other than to argue that because CUL's employees purportedly

---

And contrary to CUL's assertion that that "evidence regarding the very-public nature of the parties' relationship" is "highly relevant and critical to the outcome of this case," CUL's own position is now that the plain language of Section 7(2), even when read in light of the headings, prohibits "the exploitation of Amazon's name for marketing leverage. PTRB at 31.

believed the header qualifies the prohibition, that is how the Court should interpret the Contracts. But because the parties *never communicated* any of these internal, subjective beliefs to each other, the beliefs have no probative value in how the Court should interpret the Contracts—whether the Contracts are ambiguous or not.  *Id.* at 67 (citing *Klos* v. *Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)); *accord, e.g.*, *Invista B.V.* v. *E.I. Du Pont De Nemours & Co.*, No. 07 Civ. 713 (WHP), 2008 WL 4865044, at *4 (S.D.N.Y. Nov. 5, 2008) (even where contract was ambiguous, affidavits and depositions offering a party's interpretation of the agreement were "of no probative value"); *see also Aircraft Servs. Resales LLC* v. *Oceanic Capital Co., Ltd.* ("*Aircraft III*"), 09 CIV. 8129 PKC, 2013 WL 4400453, at *3 (S.D.N.Y. Aug. 14, 2013) (restating *Invista*), *aff'd*, 586 Fed. App'x. 761 (2d Cir. 2014).

Despite the language of the Contracts and CUL's concession, *supra*, at II.A., CUL's Opposition proceeds by arguing that because the Contracts are ambiguous, the challenged extrinsic evidence is relevant. Even here, CUL mischaracterizes the only authority it cites, *Aircraft III*. Opp'n at 10. While CUL quotes "[t]he parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent" where a contract is ambiguous, CUL conveniently omits the very next sentence: "[A] unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement . . . [is] not probative as an aid to the interpretation of the contract." *Id.* at *3 (alterations in original). And while CUL quotes "[a] party's post-execution interpretation of a contract before a motive arose (ante litem motam) has some probative value," CUL omits the immediately preceding sentence, which states that (unlike here), the party's interpretation *was communicated* to the other side.

**B.       MIL #3: The only purpose for which CUL seeks to introduce motive evidence is in support of an unpleaded good faith and fair dealing claim.**

CUL does not identify any claim or defense properly before the Court to which Amazon's

9

internal motivations would be relevant.  The sole basis CUL offers for the admissibility of motive evidence is its implied covenant of good faith and fair dealing theory, a theory CUL never pleaded, never sought leave to add across two amended complaints and more than two years of litigation, and first raised in a letter brief on the eve of trial, long after the close of fact discovery and the expiration of the deadline for amending pleadings.  That CUL once referenced bad faith in a pre-litigation demand letter,[6] or that the implied covenant inheres in every contract as a matter of New York law, does not excuse CUL's failure to assert the claim through proper procedural channels.[7]

The implied covenant may be a background principle of contract law, but it is not self-pleading—a plaintiff must actually assert it.  *See, e.g.*, *Augienello* v. *Coast-To-Coast Fin. Corp.*, 64 F. App'x 820, 822 (2d Cir. 2003) (affirming dismissal where "the complaint does not include a claim for or allegation of a breach of the duty of good faith and fair dealing" and "[n]owhere in the complaint is there any mention of a duty of good faith and fair dealing, or allegation that the defendants breached such a duty"); *Leaverton* v. *OFI Glob. Institutional, Inc.*, 21-cv-5659, 2022 WL 4133369, at *6 (S.D.N.Y. Sept. 12, 2022) (New York's prohibition on duplicative claims "does not excuse a party from pleading both claims," and a party that has "chosen not to assert any cause of action for breach of the implied covenant . . . is not free to add one now through its briefing"); *Aviles et al.* v. *Wells Fargo Bank*, 25-312-cv, 2026 WL 1256083, at *3 n.1 (2d Cir. May 7, 2026) ("[A] plaintiff must expressly identify the implied covenant by name in order to state a claim under it.")  CUL chose not to plead the implied covenant and cannot reverse that choice

---

[6] CUL argues that Amazon was put on notice of its implied covenant claim through a letter sent on June 21, 2023 by a law firm CUL replaced shortly after Amazon responded. (Opp'n at 14; PX-UUU.)  That letter, sent before CUL ever filed suit, also asserted affirmative defenses to Lanham Act violations and excused CUL's publications as "fair use." (PX-UUU at 2–3. ) CUL never asserted its Lanham Act claims or its implied covenant argument in its complaint in this case.  CUL's argument would result in the unreasonable conclusion because CUL put Lanham Act allegations in a letter it sent pre-suit, Amazon should have been on notice and conducted discovery as if the Lanham Act allegations were operative in the case.  If anything, CUL's failure to insert the implied covenant theory into its Complaint shows that CUL abandoned that theory of relief, just like its Lanham Act theories.

[7]

on the eve of trial.

CUL contends that Amazon's MIL is an impermissibly disguised motion for summary judgment on the ground that the factual record is insufficiently developed. But a motion in limine that raises a threshold question of law—here, whether motive evidence is legally relevant to any pending claim or defense—is precisely the type of pretrial ruling contemplated by the Federal Rules. *See Highland Capital Mgmt*, 379 F. Supp. 2d at 467 (motions in limine are designed to narrow the issues for trial by resolving evidentiary questions in advance). That the motion may be dispositive of a category of evidence does not transform it into a summary judgment motion any more than any other successful evidentiary ruling would. To the extent CUL contends the record is underdeveloped, that is a consequence of CUL's own litigation choices—including its decision not to plead a good faith and fair dealing claim during more than two years of litigation and two amended complaints.

Finally, CUL argues that the MIL lacks sufficient specificity. But Amazon's motion identifies with particularity the categories of evidence it seeks to exclude: internal Amazon deliberations and alleged motives for exercising the termination right, including internal communications discussing financial implications and negotiation leverage, deposition testimony suggesting Amazon would have continued the relationship if CUL agreed to revised commercial terms, evidence of declining freight rates bearing only on economic incentives, and internal employee communications discussing alternative potential bases for termination that Amazon never invoked. This level of specificity is more than sufficient. The governing standard requires only that the motion identify which evidence should be excluded with sufficient particularity for the court to rule. *See Wechsler* v. *Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 150 (S.D.N.Y. 2003) (denying MIL that "lacked sufficient specificity" because it "failed to specify which evidence

should be excluded"). Amazon's MIL does the opposite—it identifies specific types of internal communications, specific deposition testimony, and specific categories of documents by purpose and type. Moreover, the Second Circuit has expressly affirmed category-level exclusions where, as here, the evidence is offered in support of a legally unavailable argument. *See United States* v. *Aiyer*, 33 F.4th 97, 114–15 (2d Cir. 2022) (affirming pre-trial exclusion of all "evidence of competitive effects" because the legal theory for which that evidence was offered was irrelevant under the applicable legal rule, holding that such evidence bore on no "fact of consequence in determining the action" under Fed. R. Evid. 401). The structure of Amazon's MIL #3 is identical: motive evidence is excluded because motive is irrelevant where an express termination right was exercised. CUL's reliance on *Baxter Diagnostics, Inc.* v. *Novatek Med., Inc.*, 94-CV-5220, 1998 WL 665138 (S.D.N.Y. Sept. 25, 1998), is misplaced; the motion denied there sought to exclude "all evidence of plaintiff's financial condition" without identifying any specific documents or articulating a legal basis for inadmissibility applicable to the entire category—the paradigmatic blanket, unspecified request. Unlike the motion at issue there, Amazon's MIL does not seek a blanket prohibition on undefined categories of evidence but rather targets a discrete, identifiable body of evidence tied to a single legal theory that is not properly before the Court.

C. <u>MIL #4: CUL failed to properly disclose Jane Jing, offers no good cause for remote testimony, and asserts no hearsay exception or foundation for PX-DDD.</u>

CUL failed to disclose Ms. Jing in any Rule 26(a) disclosure or interrogatory response during more than two years of litigation, and each of CUL's retrospective arguments for excusing their failure conflicts with controlling authority. PX-DDD is independently inadmissible for lack of foundation and as inadmissible hearsay.

**Rule 37(c)(1) mandates exclusion for failure to disclose under Rule 26**. Rule 26(a) requires a party to identify "each individual likely to have discoverable information" it "may use

to support its claims or defenses."  CUL failed to comply with Rule 26(a), the failure was not "substantially justified," or "harmless," and should therefore be excluded.  MILs at 61–62.

The bulk of CUL's argument that Rule 37(c)(1) does not preclude Ms. Jing's testimony rests on the basis that CUL produced a single Chinese-language document a month before the discovery deadline.  CUL faults Amazon for failing to depose Ms. Jing within this month but ignores that Rule 26(e) imposes an affirmative obligation on *CUL* to supplement CUL's disclosures "in a timely manner."  Opp'n at 17.  CUL similarly faults Amazon for using the document to ask CUL's 30(b)(6)-designated deponent what the document was and who CUL contended was speaking in the document, but CUL made no indication it planned to rely on Ms. Jing's testimony.  *See id.*

Simply put, CUL's production of the document or Amazon's knowledge that Ms. Jing existed does not constitute adequate disclosure or a substantially justify a failure to disclose.  *E.g.*, *Pal* v. *New York Univ.*, No. 06-cv-5892, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) ("[K]nowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation."); *Lebada* v. *N.Y.C. Dep't of Educ.*, No. 14-cv-0758, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016) ("[T]he mere discussion of an individual in documents or deposition testimony is insufficient to create a duty on defendants to assume that such an individual is a witness."); *see also Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (affirming preclusion over party's argument that document production satisfied disclosure obligations). [8]

Nor was CUL's failure harmless.  Amazon has been prejudiced by its inability to depose

---

[8] *Arista Records LLC* v. *Lime Group LLC*, is inapplicable because CUL did not put Amazon on notice that it planned to call Ms. Jing until well after the discovery deadline, unlike *Arista* where the opposing party could still have deposed the declarants after their declarations were filed. 715 F. Supp. 2d 481, 501 (S.D.N.Y, 2010).

Ms. Jing or examine her about the circumstances of PX-DDD. *See Abouelmakarem v. Mssminja Inc.*, No. 21-cv-10625, 2023 WL 4561765, at *3 (S.D.N.Y. July 17, 2023) (granting preclusion where opposing party "was prevented from taking [witnesses'] depositions"). CUL responds by questioning how, on the basis that the document refers to a "Chris," "how can Amazon say, with a straight face, that it was not aware of a communication that involved its own employee?" Opp'n at 17. The answer lies in the fact Amazon is a company with over 1.4 million employees. *See, e.g.*, *Fleming* v. *Verizon N.Y., Inc.*, No. 03-cv-5639, 2006 WL 2709766, at *9 (S.D.N.Y. Sept. 22, 2006) ("Verizon is a large corporation with thousands of employees . . . . Absent the disclosure of the declarants' identities under Rule 26(a), it would be unreasonable to expect Verizon to depose them."). Critically, CUL has the burden of establishing compliance and has not established that "Chris" was communicating in any employment capacity sufficient to eliminate any harm. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.* v. *Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) ("The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified . . . and that it was harmless.").

CUL's cited authorities are distinguishable. Unlike here, in *Gayle Martz* v. *Sherpa Pet Group, LLC*, the party required to disclose provided corrective information that was already in the other party's possession through their own production—not the case here. 651 F. Supp. 2d at 81. And unlike here, in *Arista Records*, the undisclosed witness possessed information "no different from that possessed by a witness whose identity was timely disclosed," and the defendants still could have moved to depose" the undisclosed witnesses after their declarations were filed during ongoing litigation. 784 F. Supp. 2d 398, 439 (S.D.N.Y. 2011). CUL has no timely-disclosed witness who possesses the same information as Ms. Jing, and Amazon had no comparable opportunity to depose Ms. Jing because CUL did not file any declaration or otherwise indicate it

14

planned to call her until well after the close of discovery.

**CUL Has Not Satisfied Rule 43(a)**.  Federal Rule of Civil Procedure 43(a) permits remote testimony only "[f]or good cause in compelling circumstances."  The Advisory Committee Notes confirm that "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause."  Ms. Jing is a current CUL employee at CUL's Singapore headquarters and her location has been foreseeable from day one.  Courts in this District have denied remote testimony under materially more sympathetic facts.  *See Goodman* v. *Goodman*, No. 1:21-cv-10902, 2026 WL 18630, at *12 (S.D.N.Y. Jan. 2, 2026) (denying remote testimony where witness's inability to travel was known "for years" and party failed to preserve testimony by deposition); *Christians of Cal., Inc.* v. *Clive Christian N.Y., LLP*, No. 13-cv-275, 2014 WL 6467254, at *5 (S.D.N.Y. Nov. 10, 2014) (denying Rule 43(a) motion where party sought to "correct the problem caused by [its] failure to depose [a witness] with a double-fix").  CUL's argument is even weaker than in *Goodman* and *Christians of Cal.*.  CUL never disclosed Ms. Jing at all. Ms. Jing's unsubstantiated assertions of travel anxiety and a "weak immune system," unsupported by any medical documentation, do not satisfy the standard.  *See Radosti* v. *Hudson's Bay Co.*, No. 18-cv-12266, 2022 WL 2119299, at *2 (S.D.N.Y. May 4, 2022) (denying remote testimony absent "sworn affidavits or any medical documentation"). The compounding prejudice of interpreter-mediated cross-examination of a previously undeposed witness independently defeats CUL's motion.  *See E. Profit Corp. Ltd.* v. *Strategic Vision US LLC*, No. 18-cv-2185, 2020 WL 6048158, at *3 (S.D.N.Y. Oct. 13, 2020) (need for interpreters "mak[es] it difficult to conduct cross-examination remotely").

**PX-DDD Is Inadmissible Hearsay**.  CUL invokes the party-opponent agency exception to hearsay under Rule 801(d)(2)(D), but the proponent must independently establish the agency

15

relationship and the declarant's own statements cannot supply the foundation.  *See Pappas* v. *Middle Earth Condo. Assoc.*, 963 F.2d 534, 537 (2d Cir. 1992); *Feis v. United States*, 394 F. App'x 797 (2d Cir. 2010).  PX-DDD displays only the first name "Chris" with no corporate identification. The sole basis for concluding "Chris" is an Amazon employee is Chris's own statements in PX-DDD and a hearsay chain through a third party (Jocelyn Wang) whom CUL has not called.  Rule 801(d)(2)(D) does not permit this form of hearsay bootstrapping.  *See Curns* v. *Wal-Mart Stores, Inc.*, 439 F. App'x 51, 53 (2d Cir. 2011) (affirming exclusion where proponent "failed to produce a witness with sufficient personal knowledge to establish the foundation required by Rule 801(d)(2)(D)").  CUL's reliance on *Smith* v. *Pathmark Stores*, 485 F. Supp. 2d 235 (E.D.N.Y. 2007), is misplaced because unlike here, there was objective, employer corroboration of the declarant's role: the declarant wore a name tag bearing the employer's name and all deposed employees confirmed the declarant's role.

Even if CUL could independently establish Chris's employment, it has not shown that Chris's statements concerned "a matter within the scope of the agency."  *Pappas*, 963 F.2d at 537. The WeChat exchange is a casual personal conversation between former colleagues, in which Chris addresses Jing as "boss" (a reference to their prior relationship) and the two discuss treating each other to dinner.  Offhand remarks about "urging booking for Culines" in a private social chat do not fall within the scope of a sales role at Amazon Global Logistics.  Rule 801(d)(2)(D) requires that the offered statements concern a matter within the scope of the agency, not merely that the declarant happens to be employed by the party opponent.  CUL has offered no evidence that Chris was authorized to speak on behalf of Amazon regarding its booking strategy or contractual obligations to CUL.  Separately, CUL's use of Ms. Jing as a conduit through which Chris's out-of-court declarations reach the factfinder is independently impermissible. *See United States v.*

16

*Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (testimony "purportedly offered for a permissible purpose" that in substance "repeat[s] hearsay evidence" "enable[s] the [proponent] to circumvent the rules prohibiting hearsay").

CUL's alternative argument—that Chris's statements are offered for "context, not truth"—is belied by CUL's own submissions. Ms. Jing's Direct Testimony Statement uses Chris's statements for their truth, testifying that "Chris's statement is the motivation behind" Amazon's WeChat postings and that the postings are "advertisements" designed to help Amazon "meet the minimum quantity commitment." (PX-NNN ¶ 12.) CUL cannot simultaneously argue that Chris's statements are offered only for "context" while submitting a sworn declaration that treats those statements as proof of Amazon's business motivations. *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 507 (S.D.N.Y. 2012), aff'd, 766 F.3d 163 (2d Cir. 2014) (document recharacterized as "state of mind" evidence "could assist" plaintiff's theory "only if admitted for its truth"). PX-DDD also fails authentication under *Vayner*, 769 F.3d at 131–32, because the critical issue is attribution of "Chris" to Amazon, and Ms. Jing has no independent basis for that attribution beyond the messages themselves.

**CONCLUSION**

For the foregoing reasons, this Court should grant Amazon's motions in limine in their entirety: (1) exclude all extrinsic evidence of the parties' subjective understanding of the Contracts; (2) exclude evidence regarding whether the parties' relationship was in fact confidential; (3) exclude all evidence of Amazon's motive for exercising its express contractual termination right; and (4) preclude Jane Jing from testifying (in person or remotely) and exclude PX-DDD.

17

Respectfully submitted,

Dated:  May 29, 2026                    K&L GATES LLP


By:  /s/ Vi D. Tran_____

   Vi D. Tran
   925 Fourth Avenue, Suite 2900
   Seattle, WA 98104
   (206) 370-5901
   vi.tran@klgates.com

   Benjamin I. Rubinstein
   599 Lexington Avenue
   New York, NY 10022
   (212) 536-3900
   benjamin.rubinstein@klgates.com

   Jeffrey C. Johnson (admitted pro hac vice)
   Abraham M. Weill (admitted pro hac vice)
   925 Fourth Avenue, Suite 2900
   Seattle, WA 98104
   (206) 623-7580
   jeff.johnson@klgates.com
   abe.weill@klgates.com

   *Attorneys for Defendant*
   *AMAZON.COM SERVICES LLC*

18